Ex parte Theophilus Deboer
**TARLTON.**

Nos. 14–01–01019–CR, 14–01–01020–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 1, 2003.

James L. Steele, Houston, for appellants.

Alan Curry, Houston, for appellees.

Panel consists of Justices YATES, SEYMORE, and GUZMAN.

## CORRECTED OPINION

CHARLES W. SEYMORE, Justice.

Appellant's motion for rehearing is overruled. The State's motion for rehearing is granted. Our opinion of February 20, 2003 is withdrawn and the following corrected opinion is issued.

Appellant, Theophilus Deboer Tarlton, appeals the denial of his application for pretrial writ of habeas corpus on the grounds that the prosecution is barred by double jeopardy and collateral estoppel. We affirm.

## Background

In November 1998, a community service inspector with the City of Houston told appellant that he needed to remove leaking oil barrels and inoperable motor vehicles from his property at 8217 Braniff. On February 6, 1999, Officer R.F. Nino, of the Houston Police Department, discovered a dark substance leaking out of two large oil drums in a moving lane of traffic near appellant's home. He observed oil spilling onto the road, on the land, and into the drainage ditch. He traced the trail of oil to the house at 8217 Braniff.

On February 8, 1999, Steven Brown discovered three to five barrels of oil leaking onto the property of Valve Sales Company at 8820 Meldrum, which was located a few blocks from 8217 Braniff. Brown called the Houston Fire Department hazardous waste team, who investigated the spill on Braniff and on Meldrum. Russell Harris, a member of the hazardous waste team, investigated the scene at 8820 Meldrum and testified that someone in a vehicle had driven to the location and dumped oil barrels. Harris then called Officer S.R. Dicker, of the Houston Police Department Major Offenders Environmental Investigation Unit. Officer Dicker traced the trail of oil from 8820 Meldrum to appellant's property.

Appellant was charged by indictment with two counts of the felony offense of disposal of used oil and one count of the felony offense of disposal of hazardous waste. TEX. WATER CODE ANN.

§ 7.176(a)(2) & § 7.162(a)(2) (Vernon 2000). Appellant waived his right to a jury and entered a plea of not guilty. At the conclusion of the State's case in chief, the trial court directed a verdict of not guilty in favor of appellant on each indictment.[1] The State has now charged appellant by information with two counts of the misdemeanor offense of water pollution. TEX. WATER CODE ANN. § 7.147(a) (Vernon 2000). Appellant filed an application for writ of habeas corpus and a special plea in double jeopardy in the trial court alleging the second prosecution is barred by double jeopardy and collateral estoppel. The trial court denied appellant's application.

## Standard of Review

In reviewing a decision to grant or deny relief on a writ of habeas corpus, we afford almost total deference to the trial judge's determination of historical facts supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. *See Ex parte Martin,* 6 S.W.3d 524, 526 (Tex.Crim.App.1999). We afford the same amount of deference to the trial judge's rulings on applications of law to fact questions if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* at 526. If the resolution of those ultimate questions turns on an application of legal standards, however, we review the determination de novo. *Id.*

## Double Jeopardy

In his first point of error, appellant contends the trial court erred by refusing to dismiss the two misdemeanor informations. Appellant contends he is the subject of a second prosecution for the same

---

1. Appellant was charged with a fourth felony, not the subject of this appeal. Appellant was convicted and appealed to this court in a separate cause number.

offense in violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution.

Appellant argues that the instant water pollution charges arise from the same facts and same transactions as the disposal of used oil and hazardous waste cases, which were considered by the trial court and resolved by acquittals. Accordingly, appellant concludes he will effectively be retried on the disposal offenses if we refuse to grant habeas relief from prosecution of the water pollution charges.

■■■■ The double jeopardy clause of the United States Constitution provides no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This protection applies to (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 164–65, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In determining whether the double jeopardy clause has been violated, we ordinarily apply the *Blockburger* test. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Blockburger* test states, "that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Id.* If the same act violates alternative provisions of both statutes, jeopardy bars successive prosecution. *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The same elements test under *Dixon* requires more than a comparison of statutory elements; rather, the essential elements relevant to a jeopardy inquiry are those of the charging instrument, not of the penal statute. *See Parrish v. State,* 869 S.W.2d 352, 354–55 (Tex.Crim.App. 1994).

■■■■ The informations for the current water pollution charges contain the following allegations:

1. Cause number 1042142: "[Appellant,] on or about FEBRUARY 6, 1999, did then and there unlawfully[ ] discharge or allow the discharge of a waste or pollutant, namely other waste, namely oil, and/or used oil and/or a petroleum hydrocarbon substance, into water in the State, namely a drainage ditch located near 8300 Braniff, that caused or threatened to cause water pollution, said discharge not being in strict compliance with a required permit or with a valid and currently effective order issued or rule adopted by the appropriate agency, namely, the Texas Natural Resource Conservation Commission."

2. Cause number 1042143: "[Appellant,] on or about FEBRUARY 8, 1999, did then and there unlawfully[ ] discharge or allow the discharge of a waste or pollutant, namely other waste, namely oil, and/or used oil and/or a petroleum hydrocarbon substance, into water in the State, namely a drainage ditch located near 8820 Meldrum, that caused or threatened to cause water pollution, said discharge not being in strict compliance with a required permit or with a valid and currently effective order issued or rule adopted by the appropriate regulatory agency, namely, the Texas Natural Resource Conservation Commission."

The indictments for disposal of used oil and hazardous waste charges were stated as follows: 1. Cause number 840183: "[Appellant,] on or about FEBRUARY 8, 1999,

did then and there unlawfully, knowingly dispose of used oil on land located near 8820 Meldrum."

2. Cause number 840185: "[Appellant,] on or about FEBRUARY 6, 1999, did then and there unlawfully, knowingly dispose of used oil on land located near 8300 Braniff."

3. Cause number 840186: "[Appellant,] on or about FEBRUARY 8, 1999, did then and there unlawfully, intentionally and knowingly DISPOSE OF and cause to be DISPOSED OF, a hazardous waste, namely, A SOLID WASTE EXHIBITING THE TOXICITY CHARACTERISTIC FOR LEAD, without all permits required by the appropriate regulatory agency, namely, the Texas Natural Resource Conservation Commission."

The felony disposal of used oil indictments include an allegation that the disposal of used oil was *on land*, and the felony disposal of hazardous waste indictment includes an allegation that the disposal of hazardous waste occurred *on land*. This element—disposal on land—is missing from the misdemeanor water pollution informations. Similarly, the misdemeanor water pollution informations allege a discharge of used oil *in water*, which caused or threatened to cause water pollution. The discharge in water and the water pollution, or threat of water pollution, is missing from the felony disposal of used oil and hazardous waste indictments. Moreover, the felony disposal of used oil and disposal of hazardous waste indictments include an allegation that appellant knowingly engaged in the prohibited acts. This culpability requirement is missing from the misdemeanor water pollution informations, which merely include an allegation that the discharge of used oil was done unlawfully.

■ Appellant contends that water pollution is a lesser included offense of disposal of oil or hazardous waste on land because the only distinction between the two offenses is that water pollution does not require the State to prove a culpable mental state. An offense is a lesser offense if "it is established by proof of the same or less than all of the facts required to establish the commission of the offense charged." TEX.CODE CRIM. PROC. ANN. art. 37.09(1) (Vernon 1981). While the double jeopardy clause bars prosecution of any offense which, according to Texas law, includes or is included within an offense for which the defendant has been acquitted, the offense of water pollution is not a lesser included offense of disposal of oil or hazardous waste. *See Parrish*, 869 S.W.2d at 355. Not only do the offenses differ in the requirement of culpability, but water pollution requires proof that the substance was introduced into the water and caused water pollution. Disposal of oil requires proof that the substance was discharged onto land. Because the two offenses contain different elements, appellant has failed to show he is now being prosecuted for a lesser included offense. Each offense requires proof of an element that the other does not; therefore, appellant's jeopardy rights have not been violated. Appellant's first point of error is overruled.

### Collateral Estoppel

In his second point of error, appellant contends the trial court erred in refusing to dismiss the misdemeanor water pollution informations. Appellant argues that, because he was previously acquitted for the felony offense of disposal of used oil and acquitted for the felony offense of disposal of hazardous waste, further prosecution for water pollution is barred by the doctrine of collateral estoppel.

The Fifth Amendment guaranty against double jeopardy encompasses collateral estoppel. *Ladner v. State*, 780 S.W.2d 247, 250 (Tex.Crim.App.1989). When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). This necessitates two inquiries. " 'First, what facts were necessarily determined in the first lawsuit? Second, has the prosecution in a subsequent trial tried to relitigate facts necessarily established in the first trial?' " *Dedrick v. State*, 623 S.W.2d 332, 336 (Tex. Crim.App.1981) (quoting *United States v. Mock*, 604 F.2d 341, 343 (5th Cir.1979)) (citations omitted). It is, of course, necessary to consider whether the issue in the second trial is actually the same as the issue decided in the earlier criminal case. WAYNE R. LAFAVE & JEROLD H. ISRAEL, 2 CRIMINAL PROCEDURE, § 17.4 at 381 (1984).

Proper application of the collateral estoppel rule requires the reviewing court to examine the entire record of prior proceedings to determine what issue or issues were foreclosed. *Ashe*, 397 U.S. at 443, 90 S.Ct. 1189; *State v. Nash*, 817 S.W.2d 837, 840 (Tex.App.-Amarillo 1991, pet. ref'd). The test is whether the verdict was necessarily grounded upon an issue which the defendant seeks to foreclose from litigation, not whether there is a possibility that some ultimate fact has been determined adversely to the State. *Nash*, 817 S.W.2d at 840; *see Ex parte Lane*, 806 S.W.2d 336, 338 (Tex.App.-Fort Worth 1991, no pet.). "[T]he scope of the facts that were actually litigated determines the scope of the factual finding covered by collateral estoppel." *Ex parte Taylor*, 101 S.W.3d 434, 442 (Tex.Crim.App. 2002) (not yet reported). Collateral estoppel precludes a subsequent prosecution only if the matters to be relitigated dictated the previous acquittal, and the fact finder could not rationally have based its verdict on an issue other than the issue the defendant seeks to foreclose. *Nash*, 817 S.W.2d at 840–41; *see also Wright v. Whitley*, 11 F.3d 542, 545 (5th Cir.1994).

At trial, Gracie Lopez, a community service inspector with the City of Houston, testified she told appellant in mid-November 1998, that he needed to move the oil barrels and inoperable vehicles from his property. On cross-examination, Lopez testified that although she spoke with appellant, when she checked the ownership of the home, the owner was listed as Benjamin Tarlton.

Officer R.F. Nino of the Houston Police Department testified that, on February 6, 1999, while on patrol, he saw two fifty-five gallon drums and a dark substance in a moving lane of traffic near 8300 Braniff in Houston, Texas. He determined the substance was an oily, grainy-type material. A trail of oil was seeping from the drums and Officer Nino followed the trail of oil across the property to the driveway at appellant's home at 8217 Braniff. Officer Nino declined to speculate whether the oil spill was accidental or intentional.

Steven Patrick Brown is a former vice-president of Valve Sales Company, located at 8820 Meldrum, near appellant's home. On February 8, 1999, Brown drove onto the property at 8820 Meldrum and discovered three to five barrels of oil leaking. The barrels did not belong to Valve Sales Company, and Brown testified that whoever dumped the oil had to have entered through a broken gate.

Russell Harris of the Houston Fire Department hazardous materials team testified that he investigated both locations where leaking oil barrels were found. His investigation led to the conclusion that someone in a vehicle had driven to the

locations and dumped the oil barrels. A distinct oil trail led to 8217 Braniff. Harris called Officer S.R. Dicker of the Houston Police Department major offenders environmental investigation unit. He testified that at the Braniff location, two drums had dropped off the road and into the adjacent ditch. Puddles of oil were on the property. A station wagon, which was registered to appellant, was parked near two drums leaking oil. Those drums had holes punched in the bottom of them with a puncture tool found near the drums. The tool and its handle were oily. The station wagon's tires had oil on them, indicating the vehicle had been driven through the oil. Officer Dicker testified that several oil barrels were on the property at 8217 Braniff and were tipped over, leaking oil.

Officer Dicker was also called to the location at 8820 Meldrum. He testified that he followed the oil trail from 8820 Meldrum to appellant's property. This trail led to the same location as the trail he investigated from the Braniff location. The two trails were separate in that the trail investigated on February 6, 1999, was in the middle of the road and the trail investigated on February 8, 1999, was on the right side of the road. It appeared to Officer Dicker that the February 8 trail went from appellant's property to 8820 Meldrum.

Ted Agon testified that he lived next door to the property at 8217 Braniff and that appellant lived at that address.

At the conclusion of the State's case-in-chief, appellant moved for a directed verdict on the grounds that the State did not connect appellant with the property where the oil was dumped and there was no evidence that appellant intentionally and knowingly dumped the oil. The State responded, stating that appellant was linked to the property through the testimony of Lopez, Agon, and the certified copy showing the station wagon was registered to appellant. The State further responded that the evidence that Lopez had warned appellant about the leaking oil and the oil trails leading to his home were sufficient evidence to show intent. The trial judge granted appellant's motion without stating a reason.

Appellant argues that the following issues of ultimate fact were decided by the trial court: (1) appellant did not unlawfully, knowingly dispose of used oil on land located near 8300 Braniff on February 6, 2000; (2) appellant did not unlawfully, knowingly dispose of used oil on land located near 8820 Meldrum; and (3) appellant did not dispose of hazardous waste on land located near 8820 Meldrum on February 8, 1999. Appellant further argues that the court, by directed verdicts of not guilty, also found as an issue of ultimate fact that (1) he was not the perpetrator of the alleged offense or even at the scene of either incident at the time of the alleged illegal dumping of the used oil or hazardous waste; (2) he was not a party to the alleged offense; and (3) there were insufficient affirmative links between any used oil discovered at 8217 Braniff and the alleged disposal of used oil on land located near 8300 Braniff on February 6, 2000, or the disposal of used oil on land located near 8820 Meldrum.

In moving for a directed verdict, appellant contended the State did not connect appellant with the property where the oil was dumped and there was no evidence that appellant intentionally and knowingly deposited the oil. In directing a verdict of not guilty, the court did not specify its reasons. If the trial court had specifically found that appellant was not sufficiently connected to the dumped oil, collateral estoppel would bar a subsequent prosecution. The trial court, however, could have

based its decision on the lack of intent or any other basis. Under the current informations, the State must prove that appellant polluted water by dumping a hazardous substance in a drainage ditch, but need not prove intent. Because the trial court could rationally have based its verdict on issues other than those appellant now seeks to foreclose, we cannot find that the instant prosecutions violate the collateral estoppel rule. *See Nash*, 817 S.W.2d at 840–41. Therefore, the acquittal in the first trial does not estop the State from trying appellant under the pending informations. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.