Opinion of July 17, 2007 Withdrawn; Affirmed and Substitute Memorandum
Opinion filed October 4, 2007








 

Opinion
of July 17, 2007 Withdrawn; Affirmed
and Substitute Memorandum Opinion filed October 4, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00377-CR

____________

 

LAURENCE LEE CANO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 149th
District Court

Brazoria County, Texas

Trial Court Cause No. 42,716-1

 



 

S U B S T I T U T E   M E M O R A N D U M   O P I N I O N

We withdraw the opinion issued July
17, 2007 and substitute the following opinion.

A jury convicted appellant Laurence Lee Cano of sexual
assault and sentenced him to ten years= probation and a
$10,000 fine.  Appellant thereafter filed an application for writ of habeas
corpus, alleging he received ineffective assistance of counsel at trial, which
the trial court denied.  In a single issue, appellant challenges the denial of
his application for writ of habeas corpus. 








Background

At appellant=s trial, the State
called five witnesses.  The complainant testified that between 9:30 and 10:00
a.m. on the morning of Tuesday, May 22, 2001, as she parked in front of her
apartment in Sweeny, Texas, appellant, a bread truck driver who also owned and
managed her apartment complex, parked behind her and told her he needed to
speak with her.  After the complainant went inside her apartment and changed
clothes, she let appellant inside.  The complainant showed appellant painting
she had done in the apartment, a rotting board in her bathroom, and mildew on a
wall in her bedroom.  She claimed appellant then threw her on the bed, sat on
top of her legs, and told her he Ahad a rubber,@ to which she
replied that she did not care.  Despite her pleas to stop, appellant then
pulled her shorts to the side and penetrated her vagina with two of his
fingers.  As appellant stood up to undress himself, the complainant went to the
front door.  Appellant told her Anot to tell
anybody,@ and she then left
for her parents= house.  According to the complainant,
appellant came by her parents= house a week later and asked whether she
had told anyone about the incident and if she was mad at him.  She said no, and
he left.  She further testified that, at the direction of Chief Gary Stroud of
the Sweeny Police Department, she informed appellant=s wife about the
incident. 








On cross-examination, as part of the defense=s theory that the
complainant falsely accused appellant of sexual assault because she was angry
with him for evicting her, appellant=s trial counsel
asked the complainant if she was ever served with an eviction notice or told to
move out.  She responded negatively.  In voir dire examination outside the
presence of the jury, counsel also attempted to impeach the complainant with
questions regarding prior false accusations of sexual misconduct she allegedly
made against three other men:  her brother, a man named Joshua Dudley Roberts,
and an unnamed man she encountered at a convenience store in Sweeny.  The
complainant maintained that the allegations against her brother were true, that
she remembered the incident with Roberts and he may have received a Acitation,@[1] and that she did
not recall making the allegation about the third man.  The trial court
precluded counsel from cross-examining the complainant about the allegations
because counsel failed to prove their falsity.  Trial counsel did not further
pursue these allegations. 

The State thereafter called the complainant=s mother and
husband to establish that the complainant was upset both after the alleged
incident and after speaking with appellant a week later and to confirm that no
eviction notice was ever issued to the complainant.  The State also called
Miranda Ballard, who testified over objection that, in the early morning hours
of October or November 2001, after she stopped on the side of the road in
response to his flashing headlights, appellant improperly touched her breast
and asked to perform sex acts on her in the back of his bread truck.  On cross-examination,
Ballard stated that she filed a police report regarding the incident but did
not file charges because she wanted to avoid the Ahassle.@  Appellant=s counsel did not
attempt to elicit a motive or bias or otherwise impeach Ballard.[2] 
The State finally called Constable Willie Howell, appellant=s relative by
marriage, who testified that appellant told him the complainant approached him
sexually while he performed maintenance on her bathroom and that he digitally
penetrated her vagina with consent.  Appellant responded that Constable Howell
must have misunderstood his statements and that he simply told the constable
about the allegation and that it was false.  








Appellant=s counsel called a number of witnesses,
each supporting the defense=s theories that the complainant fabricated
her story as revenge for her eviction and that appellant was on his bread route
at the time of the incident.  Appellant testified that he left an eviction
notice with the complainant the last week of May 2001 when she was not home. 
He also denied sexually assaulting the complainant and claimed he was at work
at the time of the incident.  However, appellant later stated that he could not
recall where he was at the time of the incident.  Appellant recalled discussing
the complainant=s painting in her apartment in early May
2001, but could not recall whether he observed or repaired a mildewed wall or
rotten board there.  Appellant also offered a different version of his
encounter with Ballard.  He denied assaulting her, claiming that he flashed his
lights at her while on his bread route because he thought she was driving drunk
and then agreed to follow her home.  Appellant further testified that, before
the time of the alleged incident, he visited the complainant=s parents= house to discuss
repair work they were to complete on property managed by appellant, but he
could not describe what visible disability the complainant=s father had.  The
complainant=s mother testified on rebuttal that appellant never
made such a visit and noted that her husband had lost an arm. 

Trial counsel thereafter elicited, through testimony from
appellant=s son, his wife, and two of his co-workers, that complainant
was evicted, the rear area of bread trucks like appellant=s are very full
when stocked for daily deliveries,[3]
most bread routes end between 12:00 and 3:00 p.m., and Tuesdays are Alonger days@ for drivers. 
Appellant=s wife additionally testified that the complainant
told her that appellant called her several times and Ac[ame] onto her,@ which she claimed
found no support in their phone records.  Appellant=s wife, however,
admitted she did not know the complainant=s number and
simply looked for long distance calls to Sweeny and found none.  Counsel
further called Chief Stroud, who testified that, although the complainant
discussed with him whether she should talk to appellant=s wife about the
alleged incident, he never instructed the complainant to do so.  Counsel
finally called James McCabe, another of appellant=s relatives by
marriage, who testified that appellant told him that one of his tenants had
falsely accused him of sexual assault to ruin his family or extort money from
him because he was her landlord. 








After the jury convicted appellant and sentenced him to
probation, appellant filed an application for habeas corpus pursuant to article
11.072 of the Texas Code of Criminal Procedure, alleging he received
ineffective assistance of counsel at trial and attaching in support affidavits
from trial counsel and various other parties.  Appellant pointed to the
following mistakes or omissions of trial counsel:  (1) failure to discover and
present impeachment evidence, including testimony of the complainant=s three
ex-boyfriends and Chief Stroud, (2) failure to file a motion in limine or
object to evidence that appellant fathered an illegitimate child, (3) failure
to file a motion in limine or object to appellant=s wife=s attempt to
dissuade her sister from testifying against appellant, (4) failure to file a motion
in limine or object to evidence that appellant was fired from his position as a
police officer fifteen years ago for filing a false report, and (5) referring
to the complainant as the Avictim@ when the defense=s theory was that
no crime occurred.  After a hearing, the trial court found that, with the
exception of failing to object to appellant=s dismissal for
the false report, each of counsel=s actions were
deficient.  However, the court found that there was no reasonable probability
that, but for each of counsel=s failures, the results would have been
different.  Thus, the court found trial counsel was not ineffective and denied
appellant=s application.  This appeal followed.

Analysis








In reviewing the trial court=s decision to
grant or deny a habeas application, we review the facts in the light most
favorable to the court=s ruling and uphold it absent an abuse of
discretion.  Ex parte Peterson, 117 S.W.3d 804, 819 (Tex. Crim. App.
2003).  We afford almost total deference to a trial court=s determination of
the historical facts that the record supports, especially when the fact
findings are based on an evaluation of credibility and demeanor.  Id.  We
afford the same amount of deference to the trial judge=s application of
the law to the facts, if the resolution of those ultimate questions turns on an
evaluation of credibility and demeanor.  Id.; see Ex parte Tarlton,
105 S.W.3d 295, 297 (Tex. App.CHouston [14th Dist.] 2003, no pet.). 
Where the resolution of those ultimate questions does not turn on credibility
or demeanor of witnesses, we apply a de novo review standard. Ex parte
Tarlton, 105 S.W.3d at 297.  Here, where the trial court=s decision was
based at least in part on the credibility of competing affidavits, we review
its decision under an abuse of discretion standard.  See Manzi v. State,
88 S.W.3d 240, 243B44 (Tex. Crim. App. 2002). Where the
decision was based on an application of legal standards, we review the
determination de novo.  See Ex parte Peterson, 117 S.W.3d at 819. 

To prevail on a claim of ineffective assistance of counsel,
appellant must prove both prongs of Strickland v. Washington, 466 U.S.
668, 687 (1984), by a preponderance of the evidence.  See Salinas v. State,
163 S.W.3d 734, 740 (Tex. Crim. App. 2005).  First, appellant must prove that
his counsel=s conduct was objectively deficient.  Ex parte
McFarland, 163 S.W.3d 743, 753 (Tex. Crim. App. 2005).  In assessing this,
we look to see if counsel was acting as Aa reasonably
competent attorney@ would under the circumstances.  Id. 
Appellant has the burden of proof and must overcome a strong presumption that
counsel=s performance fell
within the wide range of reasonable professional assistance.  Id.  This
highly deferential review is employed to avoid the distorting effect of
hindsight.  Id.  Thus, appellant must show that his attorneys made
errors so serious that counsel was not functioning as the Acounsel@ guaranteed the
defendant by the Sixth Amendment.  Id.

Second, even if appellant can demonstrate that his counsel=s actions were
objectively deficient, appellant must still prove that their deficient
performance prejudiced his defense.  Id. at 754.  He must demonstrate
that there is a reasonable probability that, but for counsel=s unprofessional
errors, the result of the proceeding would have been different.  Id. 
The Supreme Court has defined this Areasonable
probability@ as a Aprobability sufficient to undermine
confidence in the outcome.@  Id. (quoting Strickland,
466 U.S. at 694).

I.  Failure to Investigate








Appellant contends that trial counsel performed deficiently
by failing to discover and present impeachment evidence relating to the
complainant=s mental problems, false allegations of criminal
conduct against others, and bad reputation for truthfulness.  Further, to the
extent trial counsel relied exclusively on a private investigator to discover
impeachment evidence, appellant maintains this also constitutes deficient
performance.  Appellant reasons that requests or searches for public records
relating to the complainant=s criminal complaint history would have
revealed that she made false criminal allegations against three ex-boyfriends. 
Appellant notes that, based on their affidavits, the ex-boyfriends and Chief
Stroud would have provided the following testimony to undermine her
credibility: 

1.                 
Curtis Adams, a police officer who dated and lived with the complainant
for six months in 2002, would have testified that she had mental problems, saw
a psychotherapist, and made up stories of previous rapes because of these
problems.  Adams would have further testified that she filed false police
reports that he owed her money and pistol-whipped, sexually assaulted, beat,
and harassed her. 

2.                 
Kenneth Joseph McAdams, who lived with the complainant shortly after
March 2002 and had a child with her in 2003, would have testified that the
complainant was unstable, received psychiatric treatment, and took psychotropic
medications.  McAdams would have further testified that the complainant falsely
accused him of failing to pay child support and has a reputation for being
untruthful and vindictive.  

3.         John Hobbins, who dated the complainant in 2000, would have testified that
the complainant, to exact revenge for their breakup, filed a false police
report alleging that he stole her jewelry, which she later withdrew.  Hobbins
would have also testified that the complainant has a reputation for being
untruthful and untrustworthy.   

4.                 
Chief Stroud would have testified that the complainant made numerous complaints
to the police regarding the alleged criminal conduct of her boyfriends, most of
which could not be substantiated or proved to be false.  He would have further
testified that the complainant is untrustworthy, lacks good character, and has
a reputation for being untruthful and vindictive.     








Trial counsel is charged with making an independent
investigation of the facts of the case.  McFarland v. State, 928 S.W.2d
482, 501 (Tex. Crim. App. 1996).  Ordinarily, counsel should not blindly rely
on the veracity either of his client=s
version of the facts or witness statements in the State=s file.  Id.  But the duty to
investigate is not categorical; rather, Acounsel
has a duty to make reasonable investigations or to make a reasonable decision
that makes particular investigations unnecessary.@ 
Id. (quoting Strickland, 466 U.S. at 691).  Indeed, though
counsel may not Aslough[]
off@ the duty to
acquaint himself with the facts to an investigator, Flores v. State, 576
S.W.2d 632, 634 (Tex. Crim. App. 1978), counsel is not required to investigate
the facts of the case personally and may delegate the investigation to an
investigator.  Callahan v. State, 24 S.W.3d 483, 486 (Tex. App.CHouston [1st Dist.] 2000,
pet. ref=d).  Such a
decision not to investigate must be directly assessed for reasonableness in all
the circumstances, applying a heavy measure of deference to counsel=s judgments.  McFarland,
928 S.W.2d at 501. 

We disagree that trial counsel=s investigation was deficient.  Appellant
failed to demonstrate that counsel=s
reliance on an investigator and overall failure to discover and call the
enumerated witnesses to testify to the complainant=s mental problems, false accusations, and bad
reputation for truthfulness were unreasonable.  Flores v. State, on
which appellant relies for the proposition that reliance on an investigator can
constitute deficient performance when neither party discovers evidence, is
distinguishable.  See Flores, 576 S.W.2d at 634.  There, counsel=s investigation was held
ineffective because he relied exclusively on an appointed investigatorCwho had previously shown
ineptitude in the same caseCto
conduct the entire factual investigation of the case and produce a report just
before trial.  Id. at 633B34. 
Counsel admitted he failed to conduct a factual investigation or speak to any
witnesses himself.  Id. at 633.  As a result, counsel never received a
report from the investigator and went to trial Atotally
unprepared.@  Id.
at 634.   








Here, trial counsel relied exclusively on the
investigator to discover evidence for only one factual aspect of his caseCimpeachment evidenceCand otherwise demonstrated
adequate knowledge of the facts.  While he admitted the investigator=s efforts returned Ano useful information@ and that his reliance on
the investigator was a mistake, the record reflects that either he or his
investigator discovered three independent instances where the complainant
allegedly falsely accused men of sexual misconduct.  In fact, counsel
attempted, albeit unsuccessfully, to impeach the complainant on
cross-examination with questions about these accusations.  Moreover, counsel
instructed his private investigator to contact Officer Curtis Adams, although
she ultimately failed to do so.[4]  Counsel
explained he was reluctant to subpoena Adams to testify if he did not know what
his testimony would be.  Further, counsel attempted to impeach the complainant
during trial in various ways, including eliciting Chief Stroud=s testimony that he never
told her to contact appellant=s
wife and pursuing the defensive theory that she was motivated by revenge for an
eviction to fabricate the incident.  Counsel admittedly did not ask Chief
Stroud about the complainant=s
bad reputation but explained Chief Stroud Awas
not helpful as his notes indicated he would be@
and Aseemed to have a
selective memory.@ 
Therefore, under the circumstances, and applying the appropriate deference to
counsel=s decisions,
we do not find counsel=s
reliance on an investigator and failure to discover and present the suggested
impeachment evidence unreasonable or falling below an objective standard of
reasonableness.  See McFarland, 928 S.W.2d at 501.  Compare Miranda
v. State, 993 S.W.2d 323, 327 (Tex. App.CAustin 1999, no pet.) (declining to find
ineffective assistance for inadequate investigation where, though he Acould have conducted a more
thorough investigation,@
counsel was very familiar with facts of case and prepared with defenses,
actively participated in trial through extensive cross‑examination of
State=s witnesses to
challenge State=s
version of events, and called two defense witnesses to establish alibi
defense), with Butler v. State, 716 S.W.2d 48, 55B56 (Tex. Crim. App. 1986)
(holding counsel=s
representation fell below objective standard of reasonableness where he
completely failed to independently investigate additional alibi witnesses who
would have provided far greater detail of alibi than alibi witness called). 








Moreover, we do not find appellant has shown he was
prejudiced by counsel=s
failure to discover and call the enumerated witnesses because this failure did
not preclude him from advancing his only viable defense at trial and because
most of the witnesses=
potential testimony would have been inadmissible.  We will not reverse a
conviction unless the consequence of the failure to investigate is that the
only viable defense available to the accused is not advanced.  McFarland,
928 S.W.2d at 501.  Likewise, counsel=s
failure to call witnesses is irrelevant absent a showing that appellant would
have benefitted from their testimony.  See Butler, 716 S.W.2d at 55. 
Appellant=s only
viable defense was not precluded because trial counsel substantially developed
the defensive theory that appellant was on his bread route at the time of the
incident, presenting supporting testimony from three witnesses.  Further,
testimony from the ex-boyfriends and Chief Stroud concerning the complainant=s prior false accusations
would not have benefitted his defense because it would not have been admissible. 
Texas Rule of Evidence 608 generally bars the use of specific instances of
conduct to impeach a witness=s
credibility, except to expose bias, correct a witness=s affirmative misrepresentations made on
direct examination, or demonstrate lack of capacity.  See Tex. R. Evid. 608(b); Lagrone v.
State, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997).  However, the Court of
Criminal Appeals has held that the Confrontation Clause Amay require the admissibility of evidence that
the Rules of Evidence would exclude.@ 
See Lopez v. State, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000). 
Extraneous accusations will be admissible where the probative value outweighs
any risk of admission.  See id.  For such accusations to have probative
value in impeaching the witness=s
credibility, and thus be admissible, a party must show the accusations were
false and similar to the current accusation.  See id. at 226; Lempar
v. State, 191 S.W.3d 230, 239 (Tex. App.CSan
Antonio 2005, pet. ref=d). 
Simple denial testimony by the accused parties does not establish falsity, nor
does the dismissal of or failure to pursue charges.  See Garcia v. State,
228 S.W.3d 703, 706 (Tex. App.CHouston
[14th Dist.] 2005, pet. ref=d);
Wheeler v. State, 79 S.W.3d 78, 87 (Tex. App.CBeaumont 2002, no pet.). 








Appellant failed to show that the allegations by Adams,
McAdams, Hobbins, and Chief Stroud of complainant=s
false accusations of sexual and other criminal conduct meet a threshold of
falsity or similarity to the current offense warranting admissibility under the
Confrontation Clause.  Only Adams alleged that the complainant filed a false
report for sexual misconduct.  However, aside from Adams=s own denial and a lack of official charges,
there is no evidence that this specific accusation, even if made, was false. 
Each of the other allegations by Adams, McAdams, and Hobbins involve nonsexual
conduct, dissimilar from the current accusation, the falsity of which are
similarly supported only by their denials and lack of charges.  See, e.g.,
Lopez, 18 S.W.3d at 225B26
(holding that complainant=s
prior allegation of physical abuse by his mother was inadmissible because
defendant failed to shown falsity and similarity to current allegation that
defendant forced complainant into sex acts).[5] 
Additionally, though Chief Stroud asserted the complainant made several
allegations of Acriminal
conduct@ by
boyfriends, most of which could not be substantiated or proved to be false, he
did not specify whether such allegations involved sexual misconduct similar to
the current allegation.  See id. 

Finally, although testimony concerning complainant=s bad reputation for
truthfulness would have been admissible, counsel gave strategic reasons for not
calling Adams for any purpose and for not calling Chief Stroud as a reputation
witness.  This left only two potential bad-reputation witnesses counsel failed
to discoverCMcAdams
and Hobbins, both ex-boyfriends who were involved in volatile relationships
with the complainant and who would have likely been exposed to substantial
cross-examination.  Under the circumstances, we cannot say appellant met his
burden to show that, but for counsel=s
failure to discover and call these two bad-reputation witnesses, the outcome of
his trial would have been different.  See McFarland, 163 S.W.3d at 754. 








Accordingly, we conclude the trial court erred in
finding that counsel performed deficiently by relying on an investigator and
otherwise failing to discover and present appellant=s suggested impeachment evidence regarding the
complainant=s mental
problems, false accusations, and bad reputation for truthfulness.  Counsel
conducted a reasonable investigation to discover impeachment evidence using a
private investigator, gave strategic reasons for not calling two of appellant=s suggested witnesses, and
otherwise demonstrated an adequate knowledge of the facts.  We further conclude
appellant has failed to demonstrate prejudice.  Counsel=s actions or omissions did not preclude
appellant=s only
viable defense, and, because most of the suggested evidence was inadmissible,
appellant failed to show that such evidence would have benefitted his defense.[6]


II.  Failures to Object








Appellant next complains trial counsel performed
deficiently by failing to properly object to (1) appellant=s wife=s testimony that appellant
fathered a child outside marriage,[7] (2) appellant=s testimony that he was
dismissed from his position as a police officer for filing a false report,[8]
and (3) appellant=s
wife=s testimony that
she attempted to dissuade her sister from testifying against appellant in the
case.  Appellant contends that the evidence of his child outside marriage
constituted improper character evidence under Texas Rule of Evidence
404(a)(1)(A) and the evidence of his dismissal from the police constituted
improper impeachment evidence under Texas Rule of Evidence 608(b).  Appellant
further argues that counsel failed to lodge a proper objection to appellant=s wife=s testimony about her
attempts to dissuade her sister from testifying.  Appellant contends counsel
should have objected on the basis that third parties= attempts to persuade a witness to avoid
testifying are inadmissible absent a showing the defendant directed such
attempts.  See Nader v. State, 86 Tex. Crim. 424, 428, 219 S.W. 474, 476
(Tex. Crim. App. 1920). 

We conclude appellant failed to show that counsel acted
deficiently in failing to object to this evidence.  As to appellant=s wife=s testimony that appellant
fathered a child outside marriage, trial counsel explained he knowingly decided
not to object after the State asked appellant=s
wife a question, if he felt she had Ahandled
the question.@  This
court has previously found that avoiding objections to isolated, improper
evidence in order to downplay the damaging effect of such evidence is sound
trial strategy.  See Oliva v. State, 942 S.W.2d 727, 733 (Tex.
App.CHouston [14th
Dist.] 1997) (holding that counsel=s
failure to object to State=s
mischaracterization of prior conviction would have been sound strategy to avoid
overemphasis of conviction), pet. dism=d
improvidently granted, 991 S.W.2d 803 (Tex. Crim. App. 1998); cf.
Richards v. State, 912 S.W.2d 374, 381 (Tex. App.CHouston [14th Dist.] 1995, pet. ref=d) (holding that, in
attempted murder case, counsel=s
failure to object to improper, isolated statement in jury argument about body
found in piece of luggage was sound trial strategy because objecting could have
caused jury to focus on violence of incident rather than alibi defense).[9]









As to appellant=s
testimony that he was fired from the police for filing a false report, counsel
offered no strategic reason for failing to object.  However, the record reveals
the State did not thereafter significantly pursue this evidence, and counsel
gave appellant the opportunity on redirect examination to explain the false
report, which at least somewhat rehabilitated appellant.[10] 
See Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (holding
that isolated failures to object to improper evidence do not constitute
ineffective assistance of counsel).  As such, trial counsel=s failure to object to this
evidence did not constitute deficient performance. 








Finally, as to appellant=s
wife=s attempts to
dissuade her sister from testifying, appellant=s
wife  told her sister she would Anot
have anything to do with@
her if she testified.  Appellant has failed to show that such evidence was
inadmissible.  See Ortiz v. State, 93 S.W.3d 79, 93 (Tex. Crim. App.
2002) (holding that appellant must show that complained-of evidence was
inadmissible to properly bring ineffective assistance claim based on counsel=s failure to object). 
Appellant correctly states that third parties=
attempts to persuade a witness to avoid testifying are inadmissible against the
defendant absent a showing the defendant directed such attempts.  See Nader,
86 Tex. Crim. at 428, 219 S.W. at 476.  However, when a testifying witness
makes such attempts, they are admissible to impeach that witness=s credibility by showing
motive, bias, or interest.  See id. at 427B28,
219 S.W. at 475B76. 
Therefore, evidence of appellant=s
wife=s attempts to
dissuade her sister from testifying against appellant were admissible to show
bias, motive or interest and impeach her credibility.  Accordingly, because the
challenged evidence was admissible, counsel was not deficient for failing to
object to it.  See McFarland v. State, 845 S.W.2d 824, 846 (Tex. Crim.
App. 1992) (holding failure of trial counsel to object to admissible evidence
does not constitute ineffective assistance of counsel).

In addition, appellant has failed to show he was
prejudiced by these failures to object.  The failures were isolated in nature
and involved relatively innocuous evidence.  See, e.g., Ex parte
White, 160 S.W.3d 46, 54 (Tex. Crim. App. 2004) (holding that appellant
failed to show reasonable probability of different outcome where counsel failed
to object to evidence that murder victim was pregnant, which was irrelevant and
highly prejudicial, because references to pregnancy were brief, not dwelled
upon, and did not draw attention away from main issue of whether appellant ran
over victims intentionally or mistakenly).   

III.  Referring to the Complainant as AVictim@

Finally, appellant complains trial counsel performed
deficiently by referring to the complainant as the Avictim@
during cross-examination of Constable Howell.[11] 
Trial counsel admitted such references were Aslips
of the tongue@ and
inconsistent with the defense that the complainant was untruthful and no crime
occurred.  We conclude appellant has failed to demonstrate that counsel acted
deficiently in this regard because, as with his failures to object, counsel=s references to the
complainant as the Avictim@ were isolated.  See
Ingham, 679 S.W.2d at 509. 








Moreover, appellant has failed to demonstrate prejudice
from these statements.  The term Avictim@ is relatively
non-prejudicial, given that courts have held invocation of far stronger terms
did not amount to reversible error.  See Byler v. State, No. 03‑01‑00012‑CR,
2002 WL 347753, at *3 (Tex. App.CAustin
Mar. 7, 2002, pet. ref=d)
(not designated for publication) (holding that counsel was not ineffective for
failing to object to State=s
characterization of complainant as Avictim@ and noting that courts
have held reference to stronger terms such as Aslaughter,@ Athis killer,@
Asex slave,@ and Abutcher@ did not result in
reversible error); see also Johnson v. State, No. 14‑04‑00406‑CR,
2005 WL 3065872, at *4 (Tex. App.CHouston
[14th Dist.] Nov. 15, 2005, pet. ref=d)
(not designated for publication) (holding that prosecutor=s reference to complainant
as Avictim@ during voir dire did not
constitute reversible error). 

Conclusion

We conclude appellant failed to meet his burden to
establish that trial counsel=s
performance fell below an objective standard of reasonableness and a reasonable
probability that, but for counsel=s
errors, the result of the proceeding would have been different.  Therefore,
although we find the trial court erred in finding counsel rendered deficient
performance in numerous respects, we conclude appellant has failed to
demonstrate prejudice and that counsel thus did not provide ineffective assistance
at trial.  Accordingly, we conclude that the trial court did not abuse its
discretion in denying appellant=s
application for writ of habeas corpus, and thus we overrule appellant=s sole issue and affirm the
trial court=s
judgment.

 

 

/s/         Leslie
B. Yates

Justice

 

 

 

 

Judgment
rendered and Substitute Memorandum Opinion filed October 4, 2007.

Panel consists
of Justices Yates, Anderson, and Hudson.

Do Not Publish
C Tex. R. App. P. 47.2(b).









[1]  Outside the presence of the jury, the prosecutor
told the trial court that Roberts was charged with misdemeanor offensive
touching but failed to appear.  





[2]  In addition to Ballard=s testimony, the State also sought to introduce testimony from
appellant=s relative that appellant digitally penetrated her
vagina when she was ten or eleven years old.  Appellant=s counsel objected and successfully excluded this
evidence.  





[3]  With this testimony, counsel sought to rebut Ballard=s allegation that appellant requested to perform sex
acts on her in the back of his bread truck.  





[4]  The investigator, who also served as a police
officer, stated that she attempted to contact Officer Adams but could not reach
him.  Counsel thereafter instructed her to contact another officer at the
police department to help reach Officer Adams, but she declined because she
felt uncomfortable contacting these officers due to the potential appearance of
impropriety.  According to counsel, she failed to inform him of such discomfort
and instead told him Adams would not speak with her.





[5]  Appellant cites Thomas v. State, 669 S.W.2d
420 (Tex. App.CHouston [1st Dist.] 1984, pet. ref=d), in support of his argument that prior false
accusations are admissible to impeach a witness=s credibility.  We find Thomas distinguishable because the
complainant there admitted the falsity of the prior accusation.  Id. at
422B23.  





[6]  Appellant cites Ex parte Ybarra, 629 S.W.2d
943, 946 (Tex. Crim. App. 1982), and Everage v. State, 893 S.W.2d 219,
223 (Tex. App.CHouston [1st Dist.] 1995, pet. ref=d), as illustrative cases where counsel was held
ineffective for failure to impeach a witness.  However, those cases involve far
more extreme facts than the present case and are thus inapposite.  See
Ybarra, 629 S.W.2d at 949 (trial counsel, new associate with no previous
trial experience, was assigned murder case by superior night before trial and
spent twelve hours of preparation time exclusively studying Code of Criminal
Procedure); Everage, 893 S.W.2d at 223 (trial counsel, after his motion
for recess was denied, failed to call any defense witnesses, including
witnesses who would impeach critical eyewitness=s testimony that appellant was principal actor in theft by testifying
that witness stated at pretrial hearing that other party was principal actor).





[7]  In cross-examination of appellant=s wife about children living in her home, the State
elicited the following testimony:

 

Q.        And Christine and Chris
are children of [appellant=s] second marriage or first marriage?

A.         Chris is from his first
marriage.

Q.        And Christine?

A.         She wasn=tChe wasn=t married to her.

Q.        How many times has your
husband been married, ma=am?

A.         This is his second
marriage.

 





[8]  On cross-examination of appellant, the State
elicited such testimony as follows:

 

Q.         Tell us how long you worked
for Victoria Police Department.

A.         When I got out of the Air
Force, I believe October of 2000 . . . .

Q.         And why did you leave there?

A.         Somebody made an allegation that I made a false report or
something like that.  [State passes the witness.]





[9]   In further explaining his failure to object to this
testimony, counsel stated that, at this stage of the trial, he was attempting
to persuade the jury to consider probation.  Appellant contends his actions do
not comport with such strategy.  We need not address this issue because, as
noted, counsel provided a sound strategy for his actions.   





[10]  Appellant testified on redirect that he responded to
a report that people were possibly using marijuana at a park, but, when he
arrived at the scene, he could not find such activity, which he radioed back to
the station.  After further searching, he found a deputy from his police
department drinking beer at the park with a group of people and questioned the
group and the deputy about marijuana usage.  The deputy reported appellant=s questioning to the station, and appellant claimed he
got in trouble for the apparent inconsistency between his prior report and his
subsequent questioning of the deputy.  





[11]  Counsel described the complainant as the Avictim@ in the
following exchange:

 

Q.         Well, why wouldn=t [appellant] tell you the same story that the victim
[referring to the complainant] told if he knewCif he was guilty of this?

A.         I don=t
know.  I don=t know what the victim said at all.

Q.         I know that, but I=m telling you the victim told a different story.

A.         Okay.

Q.         So that means one of them, either the
victim is not telling it like it is or he=s
not telling it like it is or you=re
not telling it like it is.