**Opinion dated September 11, 2018, Withdrawn, Motion for Rehearing Denied, Reversed and Remanded, and Substitute Majority and Substitute Dissenting Opinions filed October 23, 2018.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-17-00005-CR

---

### LESLEY ESTHER DIAMOND, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from County Criminal Court at Law No. 8
Harris County, Texas
Trial Court Cause No. 2112570**

---

## S U B S T I T U T E   D I S S E N T I N G   O P I N I O N

After I issued a dissenting opinion on rehearing, the Sate filed a motion for rehearing. I withdraw my dissenting opinion on rehearing issued on September 11, 2018, and issue this substitute dissenting opinion. I note that I agree and do not dissent to the substitute majority opinion's denial of the State's motion for rehearing.

To demonstrate reversible error under *Brady*,[1] appellant was required to show the State failed to disclose material evidence that was favorable to her. *Ex Parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012). The evidence in question is (1) Gooden's certification of the Hurtado[2] report when it contained a labeling error; and (2) Gooden's removal or suspension from performing her regular job duties before she testified at appellant's trial. The record reflects the trial court found the evidence was not favorable to appellant's defense. The trial court then found that even if the evidence had been disclosed, it would not have been relevant or admissible, citing Rule 608(b). Further, the trial court concluded the evidence was not material. I respectfully dissent from the majority's conclusion that the undisclosed evidence was material.[3]

We review the trial court's denial of habeas corpus relief under an abuse of discretion standard and consider the facts in the light most favorable to the trial court's ruling. *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006). We afford almost complete deference to the trial court's determination of historical facts supported by the record, especially when those factual findings rely upon an evaluation of credibility and demeanor. *Ex parte Tarlton*, 105 S.W.3d 295, 297 (Tex. App.—Houston [14th Dist.] 2003, no pet.). We apply the same deference to review the trial court's application of law to fact questions, if the resolution of those determinations rests upon an evaluation of credibility and demeanor. *Id.* Only if the outcome of those ultimate questions turns upon an application of legal standards do

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[2] The Hurtado report is the "erroneous lab report in an unrelated case" discussed in Section II of the majority opinion.

[3] I would note that the oral pronouncement controls over the written judgment, *see Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004), and our record included the reporter's record wherein the trial stated that appellant was convicted of a Class A misdemeanor.

2

we review the trial court's determination *de novo. Id.*

The trial court made the following findings of fact:

## A. THE TRIAL

17. The State presented the following evidence of Applicant's guilt for the charged offense:

    a.    On March 23, 2013, Harris County Constable Precinct 5 Deputy Justin Bounds was conducting a traffic stop in an unrelated case on the Westpark Tollway in Harris County, Texas, when he first observed Applicant, who was the sole operator and occupant of her vehicle, driving in excess of the speed limit in the lane closest to the stopped patrol car and the other stopped vehicle.

    b.    Bounds observed Applicant make several unsafe lane changes without signaling that caused other drivers to slam on their brakes.

    c.    Bounds illuminated his overhead lights, but Applicant took a long time to stop her vehicle.

    d.    Bounds asked Applicant to step out of her car; when she did so, Applicant was staggering and could not keep her balance.

    e.    During this traffic stop Applicant told Bounds that she was coming from a golf course at a country club, but was unable to identify the name or location of the club despite being asked multiple times.

    f.    Applicant admitted she had been drinking, and told Bounds that she had consumed three Bud Light beers that day.

    g.    Bounds recovered one open can of beer and two cold, unopened cans of beer from Applicant's vehicle.

    h.    Bounds testified that Applicant appeared intoxicated; that there was a very strong odor of alcohol coming from Applicant's vehicle and breath; Applicant had red, glassy eyes, incoherent, slurred speech, and appeared confused; and Applicant indicated she was taking medication, but she was unable to identify the medication.

    i.    Bounds testified that he requested another deputy to assist him

with Applicant's traffic stop, and Bounds, who was also certified to administer standardized field sobriety tests, observed Deputy J. Francis administer the walk-and-turn and one-leg-stand field sobriety tests to the applicant.

j.   Bounds testified that he observed Applicant exhibit five clues of intoxication on the walk-and-turn test and four clues of intoxication on the one-leg-stand test, and that he formed the opinion that Applicant had lost the normal use of her mental and physical faculties.

k.   Bounds testified that Applicant had poor balance and was staggering during the walk-and-turn test.

l.   Bounds testified that Applicant's poor performance on the walk-and-turn test was not due to nervousness, and she stated that she suffered no handicaps or disabilities that would have affected her performance.

m.   Applicant was then placed under arrest for driving while intoxicated.

n.   Bounds arrested Applicant and requested a sample of her breath or blood for alcohol analysis, and Applicant refused to give a sample.

o.   Bounds secured a search warrant to obtain a sample of Applicant's blood.

p.   Bounds testified that over the course of 3 or 4 hours he had an opportunity to observe Applicant and concluded that she was "highly intoxicated."

q.   Finally, Bounds testified that:

   i.   he observed Nurse Curran draw Applicant's blood;

   ii.   Applicant's blood vials were labeled with his initials, Applicant's name, and the case number;

   iii.   the case number in the primary case was 035791513M; and

   iv.   Bounds delivered the blood vials to a secure lockbox at the Houston Police Department.

r.   This Court excluded Francis's testimony following a violation of TEX. R. EVID. 614.

4

s.  Regarding her analysis of Applicant's blood, Gooden testified that:

   i.   she retrieved Applicant's blood samples in the primary case from a cooler;

   ii.  prior to testing Applicant's blood sample, Gooden verified that the name on the blood vial labels matched the name on the sealed evidence envelope;

   iii. Applicant's name was on the blood vial labels;

   iv.  the instrument used to analyze Applicant's blood sample was validated at the time of the analysis;

   v.   Gooden followed all the lab's standard operating procedures that were in place at the time of her analysis of Applicant's blood in the primary case;

   vi.  Gooden used the PerkinElmer instrument in analyzing Applicant's blood sample;

   vii. the Standard Operating Procedures specify the use of the Agilent instrument;

   viii. the use of the PerkinElmer instrument was authorized in a memo;

   ix.  the PerkinElmer memo was an addendum to the Standard Operating Procedures; and,

   x.   the PerkinElmer instrument was validated.

t.  Gooden further testified regarding her qualifications, namely that she had completed two to three thousand exercises and passed a competency test prior to engaging in blood alcohol analysis casework.

u.  Finally, Gooden testified that alcohol did not affect everyone in the same way, and alcoholics may exhibit no symptoms of intoxication due to tolerance.

v.  Gooden then testified that her analysis of Applicant's blood sample revealed a blood alcohol level of .193 grams per 100 milliliters.

w.  Gooden testified over a period of two days, April 29 and 30, 2014, and the defense conducted a thorough cross-examination of Gooden.

5

Appellant's brief does not argue, and the majority opinion does not conclude, that any of the above findings are not supported by the record. Instead, appellant hypothesizes that Bounds' testimony was so "destroyed" by cross-examination that the jury could not have believed any part of his testimony. Discounting Bounds' evidence entirely, making Gooden's testimony "the most important evidence at trial," appellant then theorizes that the undisclosed evidence would have enabled her to impeach Gooden and either exclude her testimony or discredit it, resulting in a mistrial or an acquittal. At its' core, appellant's argument is that if we ignore Bounds' testimony the undisclosed evidence would have formed the basis for a successful attack on the blood evidence that she was intoxicated and her BAC level was over 0.15.

Evidence is material if there is a reasonable probability that, had it been disclosed, the outcome of the trial would have been different. *Ex Parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012). The United States Supreme Court has defined "reasonable probability" to mean the likelihood of a different result is great enough to undermine confidence in the outcome of the trial. *Smith v. Cain*, 565 U.S. 73, 75, 132 S. Ct. 630, 181 L. Ed. 2d 571 (2012) (citing *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). Thus the "outcome" is not a hypothetical result that a jury could have reached, such as a mistrial, but is the result of the trial in question. In this case, then, the question is whether there is a reasonable probability that, had the evidence been disclosed, the jury would have found appellant "not guilty" or answered "no" on the special issue.

Impeachment evidence "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." *Cain,* 565 U.S. at 76. According to the unchallenged findings of fact, the jury heard evidence that appellant was driving over the speed limit, made unsafe lane changes without signaling, staggered

6

when she exited her vehicle, did not know the name or location of the country club she claimed to have left, admitted to having consumed three beers, and had an empty can of beer and two cold, unopened cans of beer in her vehicle. Further, appellant appeared intoxicated, smelled of alcohol, had red, glassy eyes, her speech was incoherent and slurred, and she appeared confused. In addition, appellant failed the field sobriety tests, had poor balance and was staggering during the walk-and-turn test.

Appellant's blood was drawn, the blood vials were labeled with appellant's initials, name, and case number and delivered to a secure lockbox. Gooden retrieved appellant's blood samples and prior to testing verified the name on the blood vials matched the name on the sealed evidence envelope; it was appellant's name. Gooden followed all the lab's standard operating procedures which included, by addendum, use of the PerkinElmer instrument. Gooden had completed two to three thousand exercises and passed a competency test. Appellant's blood revealed a BAC of .193. Furthermore, from the evidence developed external to appellant's trial and adduced at the hearing on her petition, the trial court found, and appellant does not challenge, that there was no evidence of any error in the labeling of appellant's blood or Gooden's analysis of it.

The majority concludes the evidence set forth above is sufficient to sustain confidence in the jury's finding of "guilty" but not its answer of "yes" to the special issue.[4] The majority reaches this conclusion by disregarding the trial court's findings of fact and reweighing the evidence presented.[5] It is not for this court to reweigh the

---

[4] Because I would find the evidence sufficient to sustain both the "guilty" finding and "yes" answer, I do not address whether the majority's reversal of the conviction is the appropriate remedy.

[5] The majority goes so far as to quote the State's disparaging remarks about Officer Bounds to no discernible purpose.

7

evidence and invade the jury's role as the sole judge of the credibility of the witnesses and the evidence presented. *See Villani v. State*, 116 S.W.3d 297, 301 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd.).

There is no logical connection between the undisclosed evidence—that Gooden certified a report in another case that contained a labeling error by the officer or was removed or suspended from her regular job duties to provide documentation regarding that error—and the testimony describing appellant's intoxicated state or the accuracy of the blood test results. In her reply brief, appellant attacks the trial court's finding that Gooden's removal or suspension was for the purpose of documenting the Hurtado error. But the trial court expressly found the claim of Gooden's supervisor, William Arnold, that it was for another reason was not credible in light of the surrounding circumstances. In an article 11.072 post-conviction habeas corpus proceeding, the trial judge is the sole finder of fact. *See Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011). We "afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *see also Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). We are obligated to defer to the trial court's assessment of Arnold's credibility because the trial court heard his testimony while we must rely on the cold record. *See Lancon v. State,* 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

Moreover, the trial court's findings detail the events surrounding the Hurtado report, the reports of the City of Houston Officer of Inspector General and the Texas Forensic Science Commission, and correspondence between Arnold and Gooden. Those findings, but for the one noted above, are not challenged on appeal. It is the

trial court that is charged with finding the facts and applying the law. *Hester v. State*, 535 S.W.2d 354, 356 (Tex. Crim. App. 1976). "On appeal challenges to the trial court's ruling generally should be directed to whether the trial court abused its discretion in one of its findings of fact or to whether the trial court properly applied the law to those facts found by it." *Id*. We should restrict our review of the facts to any issues raised in challenge to the trial court's findings. *See id*.

"[I]mpeachment evidence is that which disputes, disparages, denies, or contradicts other evidence." *Ex Parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012) (citing *Harm v. State*, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006)). Given the unchallenged findings of fact by the trial court that the blood samples were labeled as appellant's and there was no evidence of any errors in Gooden's analysis of appellant's blood, the undisclosed evidence in this case would not impeach the evidence that appellant's blood was analyzed and had a BAC level of .193. Thus, the likelihood of a different result is not great enough to undermine confidence in the outcome of the trial. I would therefore conclude the alleged *Brady* evidence is not material and affirm the trial court's ruling.

/s/    John Donovan
        Justice

Panel consists of Justices Jamison, Busby, and Donovan (Jamison, J. majority).
Publish — Tex. R. App. P. 47.2(b).