**Affirmed and Opinion filed May 31, 2012.**



**In The**

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

_____

**NO. 14-11-00705-CR**
_____

**KASSIM LAWAL, Appellant,**

**V.**

**THE STATE OF TEXAS, Appellee.**

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1288128**

## O P I N I O N

Appellant Kassim Lawal pleaded guilty to theft of property by a government contractor. After the trial court conducted a pre-sentence investigation, the court sentenced Lawal to ten years in prison. On appeal, Lawal contends that (1) the trial court abused its discretion when it did not allow him to withdraw his guilty plea and (2) the trial court's denial of his motion for a Health Insurance Portability and Accountability Act of 1996 (HIPAA) protective order denied his right to due process during his appellate proceeding. We affirm.

# I

Lawal owned Singapore Drug and Alcohol Rehabilitation, a licensed chemical dependency treatment facility that provided counseling to minors and others under the Medicaid program for chemical dependency. Lawal contracted with a charter school group, Community Education Partners (C.E.P.), to provide individual or group counseling to juveniles during school hours. Lawal billed Medicaid for the services provided. Under Medicaid's billing requirements, Lawal was obligated to provide the services for which he billed Medicaid, and the person receiving the services had to need them.

Sergeant William Marlowe, an investigator with the Medicaid Fraud Control Unit of the Attorney General's Office, received a referral regarding Singapore from the Texas Department of Health and Human Services. Marlowe looked through the claims data from March 2005 through April 2006 that Lawal submitted to see what Medicaid was billed for and what it paid. Marlowe immediately noticed that the records showed services being rendered to school-age children for eight to twelve hours of chemical dependency treatment during school hours.

Marlowe was able to locate thirty-four of the juveniles who were the subject of the billing. Interviews with the juveniles or their guardians revealed that sixteen of the thirty-four Medicaid recipients either received little or inadequate services from Singapore. Further, the services provided were of an educational nature rather than for chemical dependency treatment—services for which Medicaid did not provide reimbursement. In some cases, the services were provided by unqualified individuals such as a receptionist and interns. Singapore also billed and received payments for individual counseling when in fact it provided group counseling. Singapore submitted billing for these sixteen Medicaid recipients totaling $67,267.88 and received $41,161.22.

Eighteen of the thirty-four Medicaid recipients never received any services. Some had never heard of the facility at all. Singapore submitted billing for these 18 Medicaid

recipients totaling $73,641 and received $50,566.82. Thus, the investigation showed that Medicaid had reimbursed Singapore a total of $91,728.04 based on fraudulent billing.

Marlowe also interviewed employees of Singapore, including Kelvin Devereaux, who had been one of the clinical directors at Singapore from November 2004 until October 2005. The interviews revealed a high turnover rate of both clinical directors and employees. Many employees left over ethical concerns or personality conflicts. The employees acknowledged that they were providing educational and life skills services rather than chemical dependency treatment. Despite the high turnover, the billing pattern and deficiencies in the file quality were consistent throughout the billing period alleged in the indictment.

The employee interviews also indicated that that Lawal kept the patient files under lock and key and did the billing himself. Although Lawal initially used a billing company to submit billings to Medicaid, the majority of the time frame alleged in the indictment he personally did the billing.

Based on the records submitted for billing, Marlow determined that Singapore had treated ninety-eight juveniles. Marlowe also obtained the patient files from Singapore, but discovered that the files only covered sixty-two of the patients, and many files were missing. The files that were recovered included no parent consent forms, even though Medicaid required parents of juveniles to be aware of and sign off on chemical dependency treatment. Moreover, the majority of the files indicated no chemical dependency. Few of the juveniles diagnostic exams reflected more than recreational drug use, and most appeared to be referred for anger management, parental issues, or general life skills. Therapy notes in the files indicated that the therapy being performed was drug education or anger management, which did not qualify as chemical dependency treatment. Additionally, the group therapy session notes appeared to be mass copied between files and few were related to drug abuse; many were signed by unlicensed and untrained individuals.

3

Marlowe testified that he interviewed about a third of Singapore's patients before he ran out of time. Although he acknowledged he did not know what the missing files reflected, he testified that he was able to prove $91,000.00 in fraud based on the records he was provided and the interviews he had conducted. Although Marlowe had not been able to prove more than $91,000.00 due to time, statutory constraints, and the ages of the patients involved, in his opinion all the billing was fraudulent.

In July 2010, the State indicted Lawal for aggregate theft by a government contractor of between twenty-thousand and one-hundred-thousand dollars. The case was set for jury trial commencing February 14, 2011.

Before trial, Lawal wrote a letter to the trial court complaining about his attorney, but also indicating that he was willing to accept the consequences on behalf of his company even though he claimed he was innocent. In the letter, Lawal claimed that Devereaux had broken into his office and stolen all the patient files in retaliation for being fired. According to Lawal, Devereaux still had the files and therefore Lawal was unable to respond to the theft charge.

After the trial was reset, Lawal's counsel moved to withdraw due to a medical condition. The trial court granted the motion and appointed new counsel to represent Lawal on March 2. Lawal's new attorney requested appointment of an investigator and the trial court granted the motion.

On May 11, Lawal pleaded guilty to the offense without a punishment recommendation. He waived his rights and entered a judicial confession stipulating to the facts alleged in the indictment. Lawal testified that he was pleading guilty for no other reason than because he was guilty. He also denied that anyone had threatened or coerced him to enter into the plea. Because Lawal was not a citizen of the United States, the trial court admonished him that it was possible he could be deported as a result of his plea. Nevertheless, Lawal indicated that he still wished to continue his plea. He agreed that his attorney had answered all his questions and he was satisfied with his representation.

4

Lawal's counsel also indicated that he had sufficient time to visit with Lawal and he believed Lawal was competent and understood what he was doing.

Lawal further testified that he understood he was pleading without an agreed recommendation. The trial court admonished him regarding the range of punishment, and Lawal indicated he understood that the punishment assessed would fall within that range. Lawal also indicated that no one had promised him deferred adjudication or regular probation. He maintained that he wished to continue with his plea. Finally, Lawal acknowledged that he understood he was making a judicial confession in open court and that the trial court could find him guilty based on that alone. The trial court found sufficient evidence to substantiate Lawal's guilty plea, but deferred its finding of guilt until July 21, for a hearing on the pre-sentence investigation report (PSI). Upon further questioning by his counsel about the details of his immigration status, Lawal acknowledged that he understood that he could be deported, but he still wanted to proceed with his plea.

In the PSI report, Lawal claimed that Devereaux took thirty-nine patient files. He claimed those thirty-nine patients were previously provided counseling by another provider, Community Counseling Associates, where Devereaux had worked as a counselor. According to Lawal, Devereaux worked at Singapore as the program director until he asked for more money. Then, according to Lawal, one Sunday in 2005, Devereaux broke into the office and took all the important documents out of each file and threatened to call Medicaid if Lawal did not pay him his last salary. Lawal claimed he was not guilty of theft because he provided the services his company was supposed to provide to their clients, and he had no intent to defraud anyone. He blamed Devereaux for taking the files, but he felt he was responsible for the missing files as the owner of the business. He also requested a second chance and the opportunity to receive probation.

At the PSI hearing, Lawal's attorney noted after reading the PSI that Lawal denied his guilt. Based on that, Lawal's attorney asked the trial court to allow Lawal to withdraw his plea and set the case for trial. The attorney argued that because Lawal was a citizen of

5

Nigeria he might have been confused during his conversations with counsel or the trial court's admonishments at the plea hearing. But the attorney reiterated that he was satisfied he had conveyed to Lawal his options. The attorney also noted that he had specifically asked Lawal why he had pleaded guilty, and Lawal responded that he wanted to get probation. And, when Lawal's attorney asked Lawal if he had received any promises or indications that he would receive probation, Lawal answered that he had not.

In response to the claim of possible language difficulty, the prosecutor noted that Lawal's first attorney was Nigerian. The prosecutor also noted that Lawal's second attorney had been on the case for "a fair amount of time" before the plea. Finally, the prosecutor reminded the trial court that Lawal's attorney had specifically asked questions regarding the immigration issue at the plea hearing and Lawal understood what he was doing when he pleaded guilty. The trial court denied the motion to withdraw the plea.

Lawal testified on his own behalf at the PSI hearing. He testified that he remembered entering his guilty plea and being admonished by his counsel and the trial court regarding the consequences of his plea. He again denied that anyone told him he would receive probation if he pleaded guilty. He maintained that he entered his guilty plea knowingly and voluntarily. He again indicated he was not forced in any way to enter his plea. Additionally, Lawal indicated not only that he had pleaded guilty because he was guilty, but also that his counsel told him that he would not allow Lawal to plead guilty if he was unwilling to say that he was guilty.

But Lawal also stated that he pleaded guilty because he was negligent, not because he intentionally committed theft. Lawal explained that he understood that if he insisted on going to trial he would have his trial in another court and he wanted to stay in his current court. When asked if he accepted responsibility for the offense, Lawal accepted responsibility for "the negligence of what happened," but he denied that he was a thief. Lawal also claimed that Devereaux took patient files that covered from 2004 to October 2005.

6

Lawal admitted that he prepared the billings to submit to the State for payments. He also admitted that he had control over the final billings and reviewed the documents before submitting them. Lawal testified that everything he submitted was correct. He understood that the program could not bill for education services, but he maintained that he never submitted billing for education services. He explained that, in his opinion, interns were also licensed to provide chemical dependency services if they were directed by someone who is licensed. Lawal denied that there were people at Singapore who were not qualified to provide services. Finally, Lawal acknowledged that Devereaux was fired in October 2005, and worked for Lawal only during the first half of the time period alleged in the indictment.

Lawal's counsel again reiterated his concerns about the voluntariness of Lawal's plea during his closing argument. Counsel requested that the trial court fashion a ten-year probated sentence to allow Lawal to pay restitution.

The trial court sentenced Lawal to ten years in prison on August 2, 2011. On August 22, within the thirty-day deadline to file a motion for new trial, Lawal filed a "Motion for HIPAA Protective Order" seeking permission to review the medical and psychological records of the patients that Lawal improperly billed. The trial court denied the motion. Lawal did not file a motion for new trial.

II

In his first issue, Lawal contends the trial court abused its discretion when it did not allow him to withdraw his guilty plea because it was given involuntarily.

A defendant may withdraw his plea as a matter of right, without assigning a reason, until judgment is pronounced or the case is taken under advisement by the trial court. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1979); *Jagaroo v. State*, 180 S.W.3d 793, 802 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). If, however, a defendant desires to withdraw his guilty plea after the court has taken the case under

7

advisement, withdrawal of the plea is within the sound discretion of the court. *Jackson*, 590 S.W.2d at 515; *Jagaroo*, 180 S.W.3d at 802. After a trial court has admonished a defendant, received the plea and evidence, and passed the case for pre-sentence investigation, the case has been taken under advisement. *DeVary v. State*, 615 S.W.2d 739, 740 (Tex. Crim. App. 1981); *Jagaroo*, 180 S.W.3d at 802.[1] Because Lawal did not seek to withdraw his plea until the case had been taken under advisement, he could not withdraw the plea as a matter of right.

Lawal argues that he denied any intent to defraud and maintained his innocence throughout the proceedings; further, the trial court received evidence that one of Lawal's counselors had stolen documents and evidence from Singapore that could have supported his claim that he did nothing wrong and which would have reflected that Lawal was responsible for billing based only on the hours of patient treatment reported to him by his counselors. Moreover, during the PSI hearing, Lawal informed the court that he was a Nigerian citizen who had some difficulties understating the English language and his attorney acknowledged that there may have been miscommunication in his conversations with Lawal. Thus, Lawal contends, his plea was involuntary and the trial court abused its discretion in denying him the ability to withdraw the plea.

Nevertheless, because the judge is free to make any finding based on the evidence regardless of the plea, withdrawal of a guilty plea is not required even when evidence in a PSI raises an issue of a defendant's innocence. *Fisher v. State*, 104 S.w.3d 923, 924 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Graves v. State*, 803 S.W.2d 342, 346 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd). Proper admonishments by a trial court

---

[1] Lawal cites *Payne v. State*, 790 S.W.2d 649, 651 (Tex. Crim. App. 1990), for the proposition that a judge must allow a defendant to withdraw a guilty plea when there is some evidence that the defendant is either not guilty or guilty of a lesser-included offense. *Payne* is distinguishable, however, because in that case a timely motion to withdraw the plea was raised during the plea hearing when the defendant pleaded guilty but then offered exculpatory testimony. *See id.* at 650–51. Here, Lawal plead guilty in an earlier proceeding and the trial court had taken the case under advisement, leaving only the issue of his punishment.

8

establish prima facie proof that a guilty plea was entered knowingly and voluntarily. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *Houston v. State*, 201 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The burden then shifts to the defendant to show he pleaded guilty without understanding the consequences of his plea and, consequently, suffered harm. *Houston*, 201 S.W.3d at 217. A defendant has a "heavy burden" to prove in a subsequent hearing that he entered the plea involuntarily. *Id.*

Here, Lawal expressly and voluntarily waived his right to a jury trial, judicially confessed to the charged offense, was admonished, and entered a guilty plea. He also acknowledged he was pleading guilty because he was guilty. Both the trial court and his counsel vigorously questioned Lawal about his understanding of the consequences of his plea. Although trial counsel suggested the possibility of miscommunication, Lawal affirmatively demonstrated through his answers to questions that he understood the consequences of his plea. And, at both the plea hearing and the PSI hearing, Lawal acknowledged that no one forced him to plead guilty or promised him anything in exchange for his plea, and he understood that the trial court could sentence him within the full range of punishment. On this record, we cannot say that the trial court abused its discretion by denying Lawal's motion to withdraw his guilty plea. *See Jagaroo*, 180 S.W.3d at 802–03; *see also Saldana v. State*, 150 S.W.3d 486, 488, 490–91 (Tex. App.—Austin 2004, no pet.) (holding trial court did not abuse its discretion in denying motion to withdraw defendant's guilty plea after defendant unveiled exculpatory scenario during his testimony at PSI hearing).

We overrule Lawal's first issue.

9

## III

In his second issue, Lawal contends the trial court's denial of his motion for a HIPAA protective order denied him due process during his appellate proceedings. In the motion, Lawal's counsel sought the medical and psychological records of the juveniles that were the subject of Singapore's fraudulent billing. Lawal sought these records from both C.E.P., which referred the juveniles to Singapore, and Devereaux's former employer, Community Counseling Associates, which provided outpatient services to the juveniles before they were referred to Singapore. Lawal also sought billing records submitted to the Texas Medicaid and Healthcare Partnership, as well as records from the Texas Department of State Health Services that could contain personal health information. Lawal argued in the motion that he believed the records would contain exculpatory information.

According to Lawal, these records may have answered questions concerning what treatment the juveniles received before being referred to Singapore, what diagnoses the juveniles received from counselors outside of Singapore, why the juveniles were referred to Singapore, and how much treatment the juveniles received from other providers during their time at C.E.P. Lawal claims that his counsel sought this information to raise a claim of actual innocence, to request a new trial in the interest of justice, and to raise the issue of ineffective assistance of counsel for failure to investigate. Lawal argues that "[w]ithout the ability to independently investigate the treatment history of the juveniles, appellate counsel was unable to meaningfully determine whether or not Lawal's case merited a motion for new trial." Consequently, Lawal maintains, the trial court's denial of his motion was constitutional error requiring reversal.

## A

As an initial matter, Lawal appears to suggest that his right to file a motion for new trial creates an additional, unqualified right to post-trial discovery, arguing that "the right to present a motion for new trial is an absolute procedural protection afforded the defendant in a criminal trial." *See* Tex. Code Crim. Proc. art. 40.001 ("A new trial shall be

10

granted an accused where material evidence favorable to the accused has been discovered since trial."); *Trevino v. State*, 565 S.W.2d 938, 940 (Tex. Crim. App. 1978) (stating that the hearing on a motion for new trial is a "critical stage of the proceedings" and is "the only opportunity to present to the trial court certain matters that may warrant a new trial, and to make a record on those matters for appellate review").

However, as the Court of Criminal Appeals has noted, the right to a hearing on a motion for new trial is not truly an "absolute right." *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). The purpose of a hearing on a motion for new trial is to (1) decide whether the cause should be retried; and (2) prepare a record for presenting issues on appeal in the event the motion is denied. *Smith v. State,* 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). A hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record. *Id.* But even a defendant who has raised matters not subject to being determined from the record is not entitled to a hearing on his motion for new trial unless he establishes the existence of "reasonable grounds" showing that the defendant could be entitled to relief. *Id.* at 338–39. To deter "fishing expeditions," a motion for a new trial on matters not determinable from the record must be supported by an affidavit showing the grounds of attack as a prerequisite to a hearing on that motion. *Id.* at 339.[2]

Thus, contrary to Lawal's argument, a defendant's right to have a motion for new trial heard is subject to certain limitations. Moreover, Lawal's authorities do not stand for the proposition that his right to file a motion for new trial entitles him to conduct the kind of post-trial discovery he seeks. Lawal cites *Griffin v. Illinois*, 351 U.S. 12, 18 (1956), for the proposition that Texas law "engenders a further right to due process with regard to an accused's motion for new trial." But *Griffin* dealt with an indigent defendant who sought a free transcript on appeal so he could be on the same footing as a non-indigent defendant,

---

[2]  We note that Lawal did not file a motion for new trial, nor did he support his motion for HIPAA protective order with an affidavit.

not a right to conduct post-trial discovery. *See id.* at 14–15. Similarly, Lawal points to *Jackson v. State* as recognizing that an accused's right to present evidence in support of a motion for a new trial is a valuable right that should not be unduly constrained or curtailed by any actions of the trial judge. *See* 318 S.W.2d 98, 102 (Tex. Crim. App. 1958). But in that case a trial court threatened to hold the juror-witnesses in contempt if they testified to jury misconduct at a hearing on a motion for new trial. *Id.* at 101–02.

Neither *Griffin* nor *Jackson* support Lawal's position that the right to file a motion for new trial necessarily engenders an additional right to secure post-trial discovery. Therefore, we reject Lawal's assertion that he is afforded an absolute right to conduct post-trial discovery merely because the statutory right to file a motion for new trial exists.

B

In his appellate brief, Lawal argues broadly that he has a constitutional due-process right to present a defense. He does not specifically cite as authority any particular provision of either the federal or state constitution. In his motion for HIPAA protective order below, however, Lawal argued to the trial court that he "has a right to compulsory process under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution." He further argued that the protective order he sought would allow him to "exercise his right to compulsory process." We therefore construe his constitutional argument to encompass the constitutional right to compulsory process.

The Sixth Amendment right to compulsory process "'is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.'" *Coleman v. State,* 966 S.W.2d 525, 527 (Tex. Crim. App. 1998) (quoting *Washington v. Texas,* 388 U.S. 14, 19 (1967)).[3] However, the right to compulsory process is not an absolute right; it is instead

---

[3] Lawal also alleged in his motion for HIPAA protective order that Article I, Section 10, of the Texas Constitution compelled the trial court to enter the HIPAA protective order, but on appeal he does not provide any argument or authority as to why the Texas Constitution provides greater protection than the

dependent upon the defendant's initiative and affirmative conduct. *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Emenhiser v. State,* 196 S.W.3d 915, 921 (Tex. App.—Fort Worth 2006, pet. ref'd). We review complaints concerning limitations on the right to compulsory process under an abuse-of-discretion standard. *Drew v. State,* 743 S.W.2d 207, 225 n.11 (Tex. Crim. App. 1987); *Emenhiser,* 196 S.W.3d at 921.

To exercise the right to compulsory process, a defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness's testimony would be both material and favorable to the defense. *Coleman,* 966 S.W.2d at 528; *see also United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (explaining that a defendant seeking to establish a violation of his constitutional right to compulsory process must at least make "some pladusible showing" of how the evidence sought would be both material and favorable to his defense).[4] Were the burden of showing materiality and favorableness not placed on the defendant, "'frivolous and annoying requests could make the trial endless and unduly burdensome on the Court and all officers thereof.'" *Coleman*, 966 S.W.2d at 528 (quoting *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983)).

Here, Lawal sought a protective order for the patient records of 70 juveniles from four different entities solely on his right to a new trial and his constitutional right of compulsory process. He did not assert in his motion that the order was required to raise a claim of actual innocence, to request a new trial in the interest of justice, or to raise the issue of ineffective assistance of counsel. In the motion, Lawal asserted that he believed the records "will contain exculpatory information." He also asserted that it was necessary to obtain the records to fully investigate his case and to determine whether he had "any bona fide issues to litigate." But Lawal did not explain how the records were material and

---

U.S. Constitution. Therefore, his state constitutional claim is waived. *See, e.g., Emery v. State*, 881 S.W.2d 702, 707 n.8 (Tex. Crim. App. 1994) (holding defendant failed to preserve his state constitutional claim when he presented no argument or authority as to why Article I, Section 10 provided greater protection than the Sixth Amendment of the U.S. Constitution).

[4] Compulsory process is not limited to witnesses, but extends to the production of non-testimonial evidence as well. *See United States v. Nixon*, 418 U.S. 683, 709 (1974).

favorable in light of his guilty plea and the evidence of Lawal's guilt presented at the PSI hearing. This evidence included investigator Marlowe's testimony concerning his review of the available records and interviews of the juveniles (or their guardians) whose treatment was the subject of Singapore's billings to Medicaid. The interviews revealed that the juveniles received little or inadequate treatment, treatment for which Medicaid does not provide reimbursement, and treatment provided by unqualified individuals. Some of those interviewed had never even heard of the facility. Further, the fraudulent billing Marlowe found was not limited to the time frame in which Devereaux was working at Singapore, undercutting Lawal's claim that Devereaux was responsible for the theft.

Thus, even if he were entitled to post-trial discovery, Lawal failed to demonstrate that the documents he sought would be material and favorable to his defense.[5] *See Coleman*, 966 S.W.2d at 528. Moreover, none of these records would support a claim of newly discovered evidence because the records were necessarily available before Lawal pleaded guilty. *See, e.g., Ex Parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006) (explaining that actual-innocence claims generally must be supported by newly discovered or newly available evidence); *Drew v. State*, 743 S.W.2d at 225 (holding that a claim of newly discovered evidence requires a showing that the failure to discover the evidence was not due to the defendant's lack of diligence).

Lawal cites *Holmes v. State*, in which the Court of Criminal Appeals reversed a defendant's conviction after a "no contest" plea because it determined that the trial court violated the defendant's right of compulsory process. *See* 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2010) (op. on reh'g). In *Holmes*, the trial court refused to allow the defendant's attorney to cross-examine the State's expert on the accuracy of its breath-testing device during his trial for driving while intoxicated. *Id.* at 173. Soon after this ruling, the

---

[5] Consequently, it is unnecessary to consider whether Lawal may be entitled to a remand to allow the trial court to review the documents sought in camera. *See Thomas v. State*, 837 S.W.2d 106, 113–14 (Tex. Crim. App. 1992) (holding that defendant did not have a due-process right to complete disclosure of exculpatory material in State's file, but was entitled to have the trial court examine material in camera, relying on *Pennsylvania v. Ritchie*, 480 U.S. 39, 58, 60 (1987)).

defendant pleaded "no contest." *Id.* The *Holmes* court held that the ruling deprived the defendant of the right to present a defense and contributed to the defendant's changing his plea from "not guilty" to "no contest." *See id.* at 173–74.

Unlike *Holmes*, Lawal knowingly and voluntarily pleaded guilty before a trial commenced; he did not move to obtain a protective order to obtain allegedly exculpatory discovery until after he was found guilty and sentenced. Therefore, he was not prevented from presenting a defense at trial and was not compelled to plead guilty as a result. *Holmes* does not advance Lawal's arguments.

On this record, Lawal has failed to demonstrate that he has a post-trial right to compulsory process and that this right required the trial court to enter his requested protective order under HIPAA. We overrule Lawal's second issue.

\* \* \*

We overrule Lawal's issues and affirm the trial court's judgment.


/s/    Jeffrey V. Brown
        Justice


Panel consists of Justices Frost, Brown, and Christopher.
Publish — TEX. R. APP. P. 47.2(b).

15