**Affirmed and Memorandum Opinion filed October 15, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00158-CR

---

### EX PARTE CRAIG DAVIDSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 1015172A**

---

### MEMORANDUM OPINION

Appellant Craig Davidson appeals the habeas court's order denying his post-conviction application for writ of habeas corpus on his conviction of aggregate theft with an amount in excess of $200,000. Davidson seeks to vacate his plea (without an agreed recommendation on sentencing) and the trial court's order of ten years' deferred adjudication community supervision on the grounds that he is innocent of theft, as charged, and that he received ineffective assistance of counsel. We affirm.

# I.     Background

In or around 2002 through 2004, Davidson and co-defendant, Richard Nugent, began conducting various real estate transactions including "wrap around mortgages, foreclosure sales, short sales, and adverse possession." The adverse possession transactions were the basis for Davidson's indictment.

Davidson maintains, under the adverse possession prong of the business, he would locate abandoned properties. Davidson asserts he would attempt to find the true owners to place a cash offer for the house "as is." If the owner could not be located, Davidson would start a claim for adverse possession by taking control of the property, filing a deed with the county, paying the back taxes, and making improvements. Davidson claims once the home was habitable, he would sell his interest in adverse possession to a grantee. According to Davidson, the deed clearly stated he was granting his interest in adverse possession. Davidson contends he consulted with attorney, Mitchell Gaspard, to "ensure the transactions were in full compliance with Texas adverse possession law."

According to the State, Davidson and Nugent orchestrated a widespread real estate scheme. The State maintains that under the scheme, Davidson and Nugent located properties throughout the Houston area that they believed were abandoned, or which had heavy tax liens levied against them. Then, Davidson and Nugent used false, forged deeds, including a "special warranty deed in the amount of past due taxes" to "convey" these properties to themselves, either in their individual capacity or to unverifiable trusts for which they were trustees. The State asserts that Davidson and Nugent then quickly sold the properties to buyers using "special warranty deeds." The State maintains that these deeds lacked any explicit statement regarding the fact that Davidson and Nugent did not own the properties outright, but were conveying to the buyers only Davidson's and Nugent's adverse-

2

possession interests to the properties; that the buyers would have to comply with the pertinent adverse-possession statute for the requisite timeframe before they could sue to quiet title and acquire true ownership; or that the rightful owners of the properties could sue to evict the buyers at any time prior to when the buyers' adverse-possession claims matured—at which point the buyers would lose the properties, as well as the money they paid to Davidson and Nugent to "buy" the premises. Davidson and Nugent did not orally advise the buyers that Davidson and Nugent did not actually own the properties, or that they were selling the buyers only their adverse-possession interests in the premises. Davidson admitted that he never mentioned anything about adverse possession to the buyers.

The State's investigation included consultation with Patrick Mahoney, an attorney certified by the Texas Board of Legal Specialization in Residential and Commercial Real Estate. According to the State, Davidson and Nugent committed theft against the legitimate property owners—by using forged deeds to convey the owners' properties to themselves, and otherwise failing to comply with the tenets of the five-year adverse possession statute[1]—as well as against the people to whom Davidson and Nugent then sold the properties—by deceiving the purchasers into believing that they were buying full and true ownership of the premises, rather than merely Davidson's and Nugent's unperfected adverse-possession interests. The State charged Davidson with the first-degree felony offense of aggregate theft by deception, listing forty-seven separate victims in the indictment (twenty-four of the complaining witnesses were the rightful owners of the properties Davidson and Nugent adversely possessed and twenty-three complaining witnesses were purchasers of the adverse possession interest).

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 16.025 (five-year adverse possession statute).

3

On April 11, 2005, applicant pleaded guilty (without an agreed recommendation as to sentencing) to aggregate theft in an amount in excess of $200,000, a first degree felony. A presentence investigation was completed. The trial court held a sentencing hearing on June 24, 2005. The trial court deferred a finding of guilt and placed Davidson on ten years' deferred adjudication with conditions, including a condition requiring payment of restitution to the complaining witnesses in the aggregate amount of $248,621.00.

Davidson filed a direct appeal with this Court, which was dismissed as untimely. *See Davidson v. State*, No. 14-05-00839-CR, 2005 WL 3072041, at *1 (Tex. App.—Houston [14th Dist.] Nov. 17, 2005, no pet.) (mem. op., not designated for publication).

On April 18, 2017, the trial court found that applicant had satisfactorily completed the conditions of supervision and the trial court terminated applicant's deferred adjudication.

On November 1, 2017, Davidson filed this application for a writ of habeas corpus. The State filed Respondent's Answer.

On February 20, 2018, the trial court denied applicant's request for hearing on his writ of habeas corpus stating a decision "will be made based upon the pleadings, affidavits, and exhibits filed in this case." The trial court also denied applicant's writ of habeas corpus.

On March 2, 2018, the trial court entered Findings of Fact and Conclusions of Law. The trial court included the following findings of fact:

8. The Court recalls the testimony of the witnesses during the PSI hearing on June 24, 2005.

9. Based on the Court's prior experience as well as recollection of the PSI hearing, the Court is familiar with attorney Ricardo Rodriguez

4

and his abilities. The Court reviewed an affidavit written by Ricardo Rodriguez, which was included as an exhibit in the Respondent's Answer. In that affidavit, Mr. Rodriguez addressed many of the Applicant's issues mentioned in the Defendant's Application for Writ of Habeas Corpus Pursuant to TCCP 11.072 and Memorandum in Support of (same).

10. The Court finds that the affidavit submitted by Mr. Ricardo Rodriguez is credible and the facts asserted therein to be true.

11. From the PSI, the Court recalled the testimony of real estate law experts for both sides regarding adverse possession.

The trial court also made the following conclusions of law:

1. The Applicant failed to prove by a preponderance of the evidence that Rodriguez's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Narvaiz v. State*, 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

2. The totality of the representation afforded the Applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case.

3. The Applicant's actions constituted a criminal offense, namely Aggregate Theft, as opposed to adverse possession.

4. The Applicant's plea was made voluntarily, knowingly and intelligently. Attorney Rodriguez's advice to Applicant was not so ineffective as to render Applicant's guilty plea involuntary.

5. The Applicant failed to prove, by a preponderance of the evidence, that there is newly discovered evidence of the applicant's innocence and that, by clear and convincing evidence, despite the evidence of guilt that supports the conviction, no reasonable juror could have found applicant guilty in light of the alleged new evidence. *Ex parte Brown*, 205 S.W.3d at 545; *Ex parte Elizondo*, 947 S.W.2d 202, 206 (Tex. Crim. App. 1996); [*see also*] *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex, Crim, App, 2002) (applicant bears burden of

proving, by preponderance of evidence, facts that would entitle him to relief).

6.    In all things, the Applicant has failed to demonstrate that his sentence of deferred adjudication was improperly obtained.

## II.    Standard of review

Texas Code of Criminal Procedure article 11.072 establishes the procedure for an applicant to seek habeas corpus relief "from an order or a judgment of conviction ordering community supervision." Tex. Code Crim. Proc. art. 11.072, § 1.  We have jurisdiction to consider appeals of denials of habeas corpus relief in cases in which community supervision has been ordered under article 11.072.  *Id*. art. 11.072, § 8.

We review the denial of habeas corpus relief under an abuse-of-discretion standard and consider the facts in the light most favorable to the habeas court's ruling.  *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006).  An applicant seeking post-conviction habeas corpus relief bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002).  We afford almost complete deference to the habeas court's determination of historical facts supported by the record, especially when those factual findings rely on an evaluation of credibility and demeanor.  *Ex parte Tarlton*, 105 S.W.3d 295, 297 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

We apply the same deference to review of the habeas court's application of law to fact questions, if resolving those determinations rests on an evaluation of credibility and demeanor; if the outcome of those ultimate questions turns upon an application of legal standards, we review the habeas court's determination *de novo*. *Id*.

6

## III. Analysis

Davidson brought this writ application pursuant to Tex. Code Crim. Proc. art. 11.072. Article 11.072, § 2(b) reads:

> At the time the application is filed, the applicant must be, *or have been*, on community supervision, and the application must challenge the legal validity of:
>
> (1) the conviction for which the order in which community supervision was imposed; or
>
> (2) the conditions of community supervision.

Tex. Code Crim. Proc. art. 11.072, § 2(b) (emphasis added). Article 11.072, § 2(b) includes individuals who have completed their term of community supervision as among those individuals who may bring a writ of habeas corpus pursuant to Tex. Code Crim. Proc. art. 11.072. *See Ex parte Enriquez*, 227 S.W.3d 779, 783 (Tex. App.—El Paso 2005, pet. ref'd) (concluding that trial court had jurisdiction to consider habeas corpus application filed by defendant discharged from deferred adjudication community supervision, under language in article 11.072 requiring that applicant, "must be, or have been, on community supervision").

### A. Actual Innocence

In his first issue, Davidson claims that "[b]ased on newly discovered evidence, appellant is actually innocent of committing theft when he lawfully appropriated and conveyed property under Texas' adverse possession statute." Davidson maintains that since his conviction, new evidence has emerged that "demolishes the State's main theory in this case." Davidson argues that "civil district courts have ruled on the legality of [Davidson's] course of conduct in two separate suits to quiet title." Davidson argues that "[o]ne of the suits involves a property contained in the indictment, and the other, a property obtained under identical conduct."

7

1. **Applicable law on a *Herrera* claim of actual innocence based on newly discovered evidence**

A claim of actual innocence is cognizable in a post-conviction habeas corpus proceeding.[2] *Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996); Tex. Code Crim. Proc. art 11.072 (procedures in community supervision case). Two types of actual innocence claims may be raised. *Herrera v. Collins*, 506 U.S. 390 (1993); *Schlup v. Delo*, 513 U.S. 298 (1995). A *Herrera*-type claim is a substantive claim in which the applicant asserts a "bare claim of innocence based solely on newly discovered evidence." *Ex parte Franklin*, 72 S.W.3d 671, 675 (Tex. Crim. App. 2002). In contrast, a *Schlup*-type claim is a procedural claim in which the applicant's claim of innocence does not alone provide a basis for relief, but is tied to a showing of constitutional error at trial. *Id*; *Ex parte Brown*, 205 S.W.3d 538, 544–45 (Tex. Crim. App. 2006); *see Schlup*, 513 U.S. at 315 (concluding Schlup's constitutional claims were otherwise procedurally barred). A *Schlup*-type claim may not be brought in an initial habeas application, as the applicant's constitutional claims are not procedurally barred. *Ex parte Villegas*, 415 S.W.3d 885, 887 (Tex. Crim. App. 2013).

When, as here, an applicant asserts actual innocence based on a *Herrera*-type claim, the habeas court must first consider whether the applicant presented "newly discovered evidence" that affirmatively establishes his innocence. *Franklin*, 72 S.W.3d at 678; *see also Ex parte Calderon*, 309 S.W.3d 64, 65 (Tex. Crim. App. 2010); *Brown*, 205 S.W.3d at 546. "The term 'newly discovered evidence' refers to evidence that was not known to the applicant at the time of trial

---

[2] For a court to reach the merits of an applicant's claim on habeas corpus, the applicant's claim must be cognizable on habeas corpus. *See Ex parte Perales*, 215 S.W.3d 418, 419–20 (Tex. Crim. App. 2007); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) ("A threshold determination in any post [-]conviction habeas corpus application is whether the claim presented is cognizable by way of collateral attack.").

and could not be known to him even with the exercise of due diligence." *Ex parte Brown*, 205 S.W.3d at 545. As the Court of Criminal Appeals explained: "The trial is 'the main event,' it is not a try-out on the road to a post-conviction writ of habeas corpus. A claim of actual innocence is not an open window through which an applicant may climb in and out of the courthouse to relitigate the same claim . . . . " *Id.* at 545–46 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)).

If the applicant presents newly discovered evidence, the habeas court then determines whether the applicant proved by clear and convincing evidence that no reasonable juror would have convicted him in light of the newly discovered evidence. *Brown*, 205 S.W.3d at 544; *Franklin*, 72 S.W.3d at 678. The habeas court must examine the "newly discovered evidence" and determine whether the "new" evidence, when balanced against the "old" inculpatory evidence, unquestionably establishes the applicant's innocence. *Ex parte Thompson*, 153 S.W.3d 416, 417 (Tex. Crim. App. 2005). The habeas court does not review the fact finder's verdict but instead decides whether the newly discovered evidence would have convinced the fact finder of the applicant's innocence. *Ex parte Elizondo*, 947 S.W.2d at 207, 209; *see Ex parte Thompson*, 153 S.W.3d at 427–28 (Cochran, J., concurring). The court of criminal appeals has noted that, generally, "[e]stablishing a bare claim of actual innocence is a Herculean task." *Ex parte Brown*, 205 S.W.3d at 545.

### 2. No "newly discovered evidence" presented and no "actual innocence"

Davidson asserts the following newly discovered evidence establishes his actual innocence: (1) the fact that some of the purchaser-complainants have been able to perfect their adverse-possession interests in the properties that Davidson sold them in the more than ten years that have passed since Davidson's criminal

case began; and (2) that some of the purchaser-complainants have purportedly represented in their civil suits to quiet title to the properties they acquired from Davidson that they were aware of the true nature of Davidson's conveyances—namely, that they were acquiring only Davidson's immature adverse-possession interest in the properties, not outright ownership. Davidson argues that the civil courts' factual and legal findings are "undisputable evidence" that his actions were legal and lawful under the law of adverse possession in Texas.

Contrary to Davidson's assertion, the fact that some purchaser-complainants have now perfected their adverse-possession interests is not "new evidence" that exonerates Davidson because it was known at the time of Davidson's plea and sentencing hearing that this was a possibility. In fact, at the sentencing hearing, the experts witnesses for the State and Davidson agreed that the purchaser-complainants could potentially complete the immature opportunities for adverse possession that they bought from Davidson if they allowed sufficient time to pass, either five years or ten;[3] if they abided by the requirements of the applicable adverse-possession statute; and if the true owners of the properties did not come forward and sue for eviction in the meantime. The civil judgment attached to Davidson's writ shows that the possibilities discussed by the expert witnesses came to realization—some purchaser-complainants were able to perfect their adverse-possession claims and acquire full ownership of the properties.

Nor do these judgments negate the fact that at the time of purchase of the "special warranty deeds" the purchaser-complainants did not know the deeds were fabricated or that they were aware at the time of purchase of the nature of Davidson's conveyance. Davidson admitted that he never mentioned anything

---

[3] The expert witnesses disagreed as to whether the five- or ten-year adverse possession statute applied.

10

about adverse possession to the buyers, and that most of the buyers were Hispanic and did not speak or read English fluently. The State's expert testified that in order to attempt to perfect a claim of adverse possession, the unsuspecting buyers would have to fund civil lawsuits, continue payment of property taxes, as well as maintain open and notorious possession of the indictment properties for either five or ten years from the date they received the invalid, fabricated deed from Davidson or Nugent. Based on this evidence, the civil documents attached to Davidson's habeas application do not constitute "new evidence;" the documents confirm that the information was known or capable of being known before Davidson's trial date or plea, which defeats Davidson's claim. Because Davidson failed to prove the evidence he relies on is newly discovered or newly available, he cannot prevail in a *Herrera* claim of actual innocence. *See Brown*, 205 S.W.3d at 545; *Lawal v. State*, 368 S.W.3d 876, 887 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

Next, Davidson asserts that new evidence of his innocence has come to light because "[i]n multiple suits since the conviction, buyers have stated they understood the conveyance to include only an adverse possession interest." Davidson mischaracterizes the assertions of the purchaser-complainants in their civil pleadings. As shown by the record, the purchaser-complainants simply expressed that the pertinent adverse-possession clock for their properties began running. The civil judgments do not show the knowledge of the purchaser-complainants at the time of Davidson's conveyance to them. The evidence shows that the buyers accrued an adverse possession over time. For example, Ofelia Ramirez—the "buyer" of the property at 5617 Southlea Street in Houston, Texas—testified in the sentencing hearing that she believed she was buying the property outright from the defendants; that the defendants never told her that their purported ownership interest in the property was based purely on adverse possession; that the

defendants did not advise her on how to perfect an adverse-possession claim; and that, had she known that she was acquiring only an immature adverse-possession interest in the property, instead of outright ownership, she would not have paid any money to the defendants. If, as Davidson contends, the purchaser-complainants were aware of the true nature of Davidson's conveyance at the time of the sales of the indictment property interests, these facts could have been discovered through due diligence and Davidson could have proffered testimony to that effect from the buyers identified in the indictment. Because this information was capable of being known at the time of Davidson's plea and sentencing, it is not "newly discovered" and cannot support an actual innocence *Herrera* claim.

In sum, Davidson presents no "new evidence," his claims of actual innocence lack support and are without merit and were properly denied. Davidson's first issue is overruled.

### 3. Failure to conduct a hearing[4]

Davidson argues in his fourth issue that the trial court erred in denying his request for a hearing on his claim of actual innocence based on newly discovered evidence. As the statute provides, "In making its determination, the court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection." Tex. Code Crim. Proc. art. 11.072, § 6(b); *see also Ex parte Cummins*, 169 S.W.3d 752, 757 (Tex. App.—Fort Worth 2005, no pet.) (article 11.072 does not require trial court to conduct hearing before rendering decision on relief sought).

*Franklin* holds that, under certain circumstances, an 11.072 writ applicant is entitled to an evidentiary hearing when the applicant raises an actual innocence

---

[4] Davidson does not contend that his claim of ineffective assistance of counsel must be the subject of an evidentiary hearing. *See Ex parte Franklin*, 310 S.W.3d at 922–23 (collecting cases holding no hearing necessary on 11.072 writs alleging ineffective assistance).

claim. *See* 310 S.W.3d at 921–23. Under *Franklin*, this right is triggered if an applicant presents evidence that constitutes an affirmative showing of innocence as set forth in *Ex parte Brown*. *See id*. at 921–22. Here, in making the determination to deny Davidson's hearing, the trial court reviewed the pleadings, exhibits and affidavits, recalled the testimony of the witnesses during the sentencing hearing, and relied on his prior experience and personal recollection before denying Davidson's request for a hearing. *See Ex parte Gonzalez*, 323 S.W.3d 557, 561 (Tex. App.—Waco 2010, pet. ref'd) (holding no evidentiary hearing required by article 11.072 to resolve controverted facts if trial judge presiding over habeas proceeding also presided over applicant's trial).

Additionally, as we have already discussed in reviewing Davidson's first issue, we agreed with the trial court's conclusion of law that Davidson has not brought forward newly discovered affirmative evidence that establishes his innocence as required to trigger any type of hearing. *See Brown*, 205 S.W.3d at 544–46; *see also Ex parte Tamayo*, No. 02–17–00135–CR, 2017 WL 6047731, at *7–8 (Tex. App.—Fort Worth Dec. 7, 2017, no pet.) (not designated for publication) (no hearing required where proffered evidence not newly discovered nor does it establish applicant's innocence). As discussed above, Davidson failed to provide "newly discovered evidence" in his application. Because Davidson did not meet the prerequisite to trigger a hearing on his *Herrera* actual-innocence claim, the trial court did not err in denying Davidson's request for one. Davidson's fourth issue is overruled.

## B.    Ineffective assistance of counsel

In his second and third issues, Davidson raises claims he received ineffective assistance of counsel. Specifically, in his second issue, Davidson claims that he would not have pleaded guilty but for the ineffective assistance of his trial counsel.

Relatedly, Davidson argues in his third issue that his trial counsel "incorrectly believed Appellant had committed theft" and "[b]efore advising appellant to enter a plea of guilty, defense counsel did not conduct a reasonable investigation to determine the validity of the state's allegations," which rendered his guilty plea involuntary.

A criminal defendant has a constitutional right to effective assistance of counsel. *Ex parte Reedy*, 282 S.W.3d 492, 500-01 (Tex. Crim. App. 2009); *see also* U.S. Const. amend. VI; Tex. Const. art. 1, § 10. This right extends to the plea-bargaining process. *See Ex parte Moussazadeh*, 361 S.W.3d 684, 688–89 (Tex. Crim. App. 2012) (*citing Hill v. Lockhart*, 474 U.S. 52, 56 (1985)).

A guilty plea is valid if "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *N. Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also Ex parte Fassi*, 388 S.W.3d 881, 886 (Tex. App.—Houston [14th Dist.] 2012, no pet.). When an applicant for habeas relief challenges the validity of a plea and asserts that he received ineffective assistance of counsel, he must show that "(1) counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and (2) the applicant was prejudiced as a result of counsel's errors, in that, but for those errors, there is a reasonable probability of a different outcome." *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 693 (1984)); *see also Ex parte Fassi*, 388 S.W.3d at 886. In the context of a collateral challenge to a guilty plea, the focus of the prejudice inquiry is on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process," and on whether a defendant has shown that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The applicant must prove both

prongs of the test by a preponderance of the evidence; failure to establish either deficient performance or prejudice will defeat a claim of ineffectiveness. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010).

"In making its determination, the [habeas] court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection." *See Ex parte Fassi*, 388 S.W.3d at 887 (quoting Tex. Code Crim. Proc. art. 11.072, § 6(b)). We review the evidence in the light most favorable to the habeas court's ruling "regardless of whether the court's findings are implied or explicit, or based on affidavits or live testimony." *Id.* at 886. We afford almost total deference to the habeas court's determination of historical facts that are supported by the record and afford the same deference to the court's application of law to the facts if resolution of those issues requires an evaluation of credibility and demeanor. *Ex parte Legrand*, 291 S.W.3d 31, 35–36 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). We review de novo the habeas court's application of legal standards. *Fassi*, 388 S.W.3d at 886. We will uphold the habeas court's judgment if it is correct on any theory of law applicable to the case. *Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001) (per curiam).

Davidson alleges he was denied effective assistance of counsel before and during his plea of guilty. He claims he received ineffective assistance of counsel when he pleaded guilty to acts that do not constitute an offense. Davidson contends that his attorney failed to investigate and understand the law of adverse possession and consequently caused Davidson to enter a guilty plea.

In an affidavit prepared by Ricardo Rodriguez, Davidson's trial counsel, Rodriguez responded to the allegations in the habeas application. Rodriguez states that during his representation of Davidson, he consulted with Mark Diaz, a criminal defense attorney and Richard Melamed, both of whom are licensed

15

attorneys in Texas with experience in real estate law. Rodriguez's affidavit asserts that Davidson understood the expert opinions of both Diaz and Melamed before his guilty plea. Melamed is a well-respected and experienced attorney who is board certified in residential, commercial, and farm and ranch real estate law. Rodriguez attests that there was never a lack of understanding of the law of adverse possession:

> At no time was Mr. Davidson advised to plead guilty. He made that informed decision on his own after consulting with myself and Mr. Diaz. He knew of Mr. Melamed's expert opinion before he entered his plea. There was never any back-door channel discussion with the Judge . . . as to what punishment the Applicant was going to receive. The suggestion that I mispresented facts to the applicant is patently false. We spent an inordinate amount of time with the Applicant discussing the issues pertaining to Adverse Possession.

> Mr. Diaz and I researched the law applicable to Adverse Possession. We thoroughly explained the law to the Applicant. Applicant's suggestion that I was ineffective for failing to know the law is misguided and unfounded. . . .

> . . . . There was never a lack of understanding of Adverse Possession. The only "bad facts" in this case were the deceptive filings, attempts to conceal identities, and the lack of full disclosure as to what was being conveyed to purchasers. The fact that civil cases have been decided years later and some claims may have ultimately been perfected years later does not change the fact that the Defendant independently, freely, knowingly and voluntarily decided to plead guilty to this offense. . . .

> The Defendant's plea was made voluntarily, knowingly and intelligently. He was never pressured, informed, or brow-beat to plead guilty. He made an informed decision based on the advice he received from myself, Mr. Diaz and Mr. Melamed. At no time did I

tell the Applicant that the Assistant District Attorney would remove and/or dismiss some of the complainants from the indictment. . . .

The trial court noted in its Findings of Fact that the court is familiar with attorney Ricardo Rodriguez and his abilities and had reviewed Rodriquez's affidavit. The court found the affidavit submitted by Rodriquez to be credible and the facts asserted therein to be true. In its Conclusions of Law, the trial court determined that Davidson had failed to prove that Rodriguez's representation was deficient and that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceedings would have been different. The trial court also concluded "[t]he totality of representation afforded the Applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case." Finally, the trial court determined that Davidson's plea was made voluntarily, knowingly and intelligently. "Attorney Rodriguez's advice to Applicant was not so ineffective as to render Applicant's guilty plea involuntary."

Considering Rodriguez's affidavit, as well as other testimony and affidavits in the record and the trial court's personal recollection of events, the trial court could have reasonably concluded that Rodriquez effectively represented Davidson and that Davidson's guilty plea was not involuntary because of ineffective assistance of counsel. Because Davidson failed to show the first prong of *Strickland*, the trial court properly denied his application for habeas relief based on claims of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 700.

Davidson's second and third issues are overruled.

## IV. Conclusion

The judgment of the trial court is affirmed.

/s/     Margaret "Meg" Poissant
           Justice

Panel consists of Justices Christopher, Hassan, and Poissant.